# Jackson v. The State.

## Indictment for Burglary.

1. *Organization of grand jury.*—The grand jury can be organized at any time during the term of the circuit court; and when the *venire* for the grand jury for the regular term of the circuit court of the county directed that the persons drawn be summoned to appear on the second Monday of the term instead of the first, and they were summoned accordingly; and after the court was regularly convened on the first Monday, it adjourned until the second Monday, when the persons who had been drawn and summoned to serve as grand jurors appeared, and from them the grand jury was organized by the court, an indictment preferred by such grand jury is valid, and is not open to the objection, that the court had no authority to organize a grand jury on any other than the first day of the term,

2. *Burglary.*—Under an indictment charging burglary, in breaking and entering a house with intent to steal, to constitute the offense charged, the intent to steal must have existed at the time of the breaking and entering; and a charge that the intent to steal must have existed "before and not after" the accused entered the house, is properly refused, as tending to mislead the jury.

3. *Same; ownership of house burglarized.*—Where, in an indictment for burglary, the ownership of the house is laid in a woman, and on the trial the only evidence of ownership was that the woman alleged to be the owner of the house was a married woman, living in the house with her husband, who was the head of the family, there can be no conviction, since, under this evidence, the law presumes that the house belonged to the husband.

4. *Same.*—A count in an indictment for burglary, which lays the ownership of the house in "—— Martin, whose Christian name was to the grand jury unknown," will, after the plea of not guilty, support a conviction, although the grand jury, by reasonable diligence, could have learned the Christian name of said Martin.

[Jackson v. The State.]

APPEAL from the Circuit Court of Baldwin.
Tried before the Hon. JAMES T. JONES.

The appellant in this case was indicted, tried and convicted for burglary, and sentenced to the penitentiary for five years.

The indictment contained two counts. In the first the ownership of the dwelling house, alleged to have been burglarized was laid in Mary J. Martin. The second count alleged the ownership of the dwelling house to be in ''——— Martin, whose christian name was to the grand jury unknown.''

On the trial of the case, as is shown by the bill of exceptions, Mary J. Martin, a witness for the State testified, that on the night of October 4, 1892, she woke up and found in her room a man. He came close to her bed and whispered in her ear: "If you want to get even with any one for this;" that this sentence was interrupted by her calling for her son; that after she called her son the man threatened to blow her brains out, and walked from the room; that it was moon-light and, the blinds of some of the windows being off, she saw the man well; and that a few days afterwards she recognized the defendant as the person who was in her room; that there was nothing missing from the house except a hat of her son, which was picked up at the gate the next morning. This witness further testified that she was the wife of Charles B. Martin, with whom she was living, and who was the head of the family. This witness also testified she was examined before the grand jury that preferred the indictment against the defendant. The testimony of the other witnesses introduced for the State, tended to corroborate that of Mary J. Martin.

The defendant requested the court to give following written charges, and separately excepted to the refusal to give each of them as asked: (3.) "The court charges the jury that the intent to steal must from the evidence be proven to their satisfaction to have existed in the mind of the burglar before and not after he had entered the house. If the intent was formed after the house was entered the jury must acquit." (4.) "The court charged the jury that if the evidence satisfied their minds beyond a reasonable doubt that Mary J. Martin, in whose name the house is alleged to have been broken, was a

married woman living with her husband at the time of the burglary and that her husband was the head of the family, the defendant can not be convicted under the 1st count of the indictment." (5.) "The court charges the jury that if they believe from the evidence that the house alleged to have been broken in the second count of the indictment as the property of —————— Martin whose christian name was to the Grand Jury unknown and that said house did at the time belong to Charles B. Martin, the husband of Mary J. Martin, living with her at the time as her husband, and that Mary J. Martin was a witness before the grand jury when the indictment was found, and that the grand jury by reasonable diligence could have ascertained the name of Charles B. Martin and did not, there is a variance in the allegation of the indictment and the ownership of the house and the jury must acquit on the 2nd count."

JOHN R. and CHARLES W. TOMPKINS, for appellant.

WM. L. MARTIN, Attorney-General, for the State.

HEAD, J.—It appears that the *venire* for the grand jurors, for the spring term 1893, of the circuit court of Baldwin county, was so issued that the persons drawn were commanded to be summoned to appear on the second Monday of the term instead of the first; and they were summoned accordingly. The court regularly convened on the first Monday, and adjourned until the second, when the persons who had been drawn and summoned to serve as grand jurors appeared, and of, or from, them a grand jury was organized by the court. This body presented the indictment under which the defendant was tried; and it is now objected that the court had no authority to organize a grand jury, on any other than the first day of the term, and that the indictment is consequently void. There is manifestly nothing in this objection. There is no provision of the statute requiring the grand jurors to be summoned to appear, or that the grand jury shall be organized, on the first day of the term. It may be done at any time during the term.

In order to constitute burglary, the intent to steal or commit a felony (to steal, in the present case, as th--- is the only intent charged in the indictment) must ¹

existed at the time of the breaking and entering. If this intent was not formed, in the mind of the offender, until after the breaking and entering were complete, there was no burglary. The charge, however, by which the defendant attempted to have this principle presented to the jury, was so drawn that the court could not do otherwise than refuse it. It instructs that the intent to steal must have existed *"before* and *not after''* the defendant entered the house. This instruction was calculated to lead the jury to believe that although the intent to steal may have existed at the time of the breaking and entering, yet, if it did not exist *after* the house was entered, there would be no burglary. Nor is it essential to the crime of burglary that the intent spoken of shall exist *before* the breaking. It must be concurrent with the breaking and entering, and may be formed at the moment of time the breaking occurs.

The first count of the indictment lays the ownership of the house, the subject of the alleged burglary, in Mary J. Martin. The only evidence of its ownership was that Mary J. Martin was a married woman, living in the house with her husband who was the head of the family. Under this evidence, the presumption of law is that the house belonged to the husband, The circuit court, therefore, erred in refusing to charge, as requested, that there could be no conviction under the first count.

The case of *Wells v. State*, 88 Ala. 239, determines that charge number 5, relating to the second count, was properly refused.

For the error mentioned, the judgment is reversed and the cause remanded. Let the defendant remain in custody until discharged by due course of law.