207 So.2d 649

Ben Esmond **DAVIS**

v.

**STATE.**

**8 Div. 79.**

Court of Appeals of Alabama.

June 13, 1967.

Rehearing Denied Nov. 21, 1967.

Martinson, Manning & Martinson, Huntsville, for appellant.

MacDonald Gallion, Atty. Gen., and Robt. F. Miller, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

Appellant was convicted of the offense of burglary in the first degree. Punish-ment was fixed at imprisonment in the penitentiary for the term of ten years.

The indictment charged that "Ben Esmond Davis, whose name is unknown to the Grand Jury other than as stated, did in the nighttime, with the intent to steal, break into and enter an inhabited dwelling, to-wit: A dwelling house located at 2419 Penn Street, Huntsville, Alabama, *owned or in the possession of Dr. Buford L. Whitt* and which was occupied by Dr. Buford L. Whitt, a person lodged therein * * *." (Italics supplied by us.)

The demurrer raised the points that the indictment, (1) charged no crime; (2) did not negate the joint ownership or possession of defendant with that of Dr. Whitt; (3) failed to show defendant was not a lawful occupant of the dwelling at the time of the alleged breaking and entering.

Counsel's argument in brief is that the "statement of the charge is insufficient for two reasons, viz: (1) It is incomplete in that the word 'by' is omitted immediately following the word 'owned,' and therefore the charge fails to negate the possession by the appellant of the dwelling he is alleged to have entered; and (2) The word 'owned' as used in the indictment, is not synonymous with possession, and, construing the indictment most strongly against the pleader upon demurrer, the indictment at best merely charges that Dr. Whitt was the owner of the fee in the premises, and was not in possession."

The form provided for indictments under Section 85, Title 14, Code 1940, which denounces the offense with which appellant was charged and convicted, reads as follows:

"29. Burglary in first degree. (§ 85 of Title 14.)

A. B. did, in the nighttime, with intent to steal (or to commit arson in the first degree, or other designated felony, as the case may be, or in the alternative) break into and enter an inhabited dwell-

ing (or other house or building within the statute, describing it and giving the name of the *owner or person in possession*) which was occupied by C. D., a person lodged therein, against," etc. (Italics supplied.) Title 15, Sec. 259 Code, supra.

■ The indictment followed substantially the language of the statute as well as the statutory form of indictment, and sufficiently negatived any lawful right of the defendant to enter the dwelling. It is our conclusion that the word "owned" as used here is synonymous with possession, and the omission of the word "by" did not render the indictment demurrable. The demurrer was properly overruled.

Dr. Whitt testified that on May 22, 1965, he was living with his family at 2419 Penn Street, Huntsville, Alabama. On that night the family went to bed early and Dr. Whitt was asleep when, shortly after nine o'clock, one of his young daughters awakened him, saying, "Daddy, somebody is breaking into our house." There were no lights on inside the house. Dr. Whitt got out of bed, removed his pistol from a night stand beside the bed and walked down the hall toward the kitchen. He saw a man in the kitchen doorway and fired his pistol at him. The back door rattled and he "saw a glimpse of a moving object" through double windows in his den from which he could see out onto his patio. He fired three times through these windows. After this he turned on the outside lights and looked out through the den windows. He saw a man's hand "sticking up over the edge of the patio" from a flower bed next to it. He also saw this person pitch some gloves over in front of the garage door and saw him throw some other objects.

Mrs. Whitt telephoned the police and they arrived within ten to fifteen minutes. The gloves and other objects remained where they had been thrown by the man who was lying in the flower bed until the police came.

On cross-examination Dr. Whitt stated he heard a man cry out after he fired the fourth shot and saw the man "flip." He did not identify the objects as gloves at the time they were thrown. At this time the man in the flower bed was saying, "Oh, I'm shot;" "Don't let me lay out here and bleed to death;" "I'm 28 years old and I've never been in trouble before;" "Come out here and do something for me." The first policemen to arrive were Evans and Jones. Later Owen, Brady and Stephens, all Huntsville police officers, arrived. Two screwdrivers and a flashlight were found on or near the concrete driveway. Dr. Whitt testified he had not noticed these objects on his property before the night of the incident.

On redirect examination Dr. Whitt identified a photograph, State's Exhibit 5, as correctly depicting the storm door leading from the patio to the utility room of his residence, this being the door leading into his home that he saw the man coming out of. He said the "marks or pushed in places" shown on the door in the picture are between a quarter and a half inch wide and are just below the door knob.

Mr. Norman Stephens, a police officer of the City of Huntsville, testified that at 9:27 o'clock the evening of May 22, he arrived at Dr. Whitt's home and went directly to the back yard where he saw appellant lying down; that he noticed a small amount of blood on appellant's back as he was loaded into an ambulance.

On cross examination this witness stated when he arrived appellant was lying next to the porch "with one arm on his head and moaning and groaning." Dr. Whitt was standing on the edge of the porch with a pistol in his hand. Appellant appeared to be weak and he smelled the odor of alcohol on appellant's person.

Officer Robert Owen testified when he arrived at the Whitt home the appellant had been removed, but officers Jones and Stephens were there. He "searched the

crime scene" and found "a pry mark * * * on the aluminum storm door," what appeared to be bullet holes in a window, blood in a flower bed, a pair of gloves in front of the garage door, two screwdrivers near the concrete driveway and a small flashlight on the driveway. He identified State's Exhibits 8 and 9 as the gloves, State's Exhibits 10, 11 and 12 as the flashlight and screwdrivers. These articles were introduced in evidence.

No evidence was offered on behalf of defendant.

The appellant contends he was due the affirmative charge because: "(1) There was no substantial evidence in the case to authorize a finding by the jury that the appellant broke into the dwelling * * * (2) in the nighttime, and (3) there was no direct testimony as to Dr. Whitt's want of consent to the alleged breaking and entering." The insistence in brief is that there is a complete absence of testimony tending to show that the windows, doors or other openings to the Whitt house through which a person might enter were closed before the alleged entry, and that, "although there was adequate proof of entry, there was no proof of the mode of entry."

■ In addition to the evidence set out hereinabove, Dr. Whitt was asked on cross examination, "q. There is a back door to the utility room; is that correct?" His answer was: "A. It comes in off the patio, the door that was prized open." The witness drew a diagram of his home on a blackboard and in explaining it to the jury, said: "There is a door coming in here, and a door going from the utility room into the kitchen and den." We are of opinion the evidence was sufficient to show a breaking and entering.

On the question of nonconsent to the entry by the owner of the premises, the appellant cites and relies on Mitchell v. State, 117 Tex.Cr.R. 78, 38 S.W.2d 331, and Dillard v. State, 126 Tex.Cr.R. 292,

71 S.W.2d 529. These cases hold that an accused cannot be convicted of burglary in the absence of evidence of nonconsent of the owner of the burglarized premises to the entering of the house or the taking of property therefrom, and that where the owner is a witness, and fails to give direct and positive testimony as to his want of consent, such want of consent may not be inferred from other circumstances in evidence.

We have not been cited to and our research has not disclosed an Alabama decision touching upon this question, but we are convinced this is not the rule in this state. We adopt the reasoning of the Supreme Court of Florida in Johnson v. State, (1946) 157 Fla. 328, 25 So.2d 801. In that case the appellant was convicted of breaking and entering with intent to commit grand larceny. The court said:

"The appellant urges us to hold the judgment against him invalid because no direct testimony was given by the owners, only one of whom took the witness stand, that neither of them consented to the property being carried away by the appellant. In support of this position he has cited our decision in Albritton v. State, 81 Fla. 684, 88 So. 623, where we recognize the rule that the nonconsent of the owner must be proved to justify a conviction of larceny and cannot be presumed from the taking. Unquestionably the court has recognized this prerequisite to a conviction of larceny. The question is the extent to which the state must go in proving this element of larceny when the defendant is on trial for breaking and entering with intent to commit that offense."

* * * * * *

"Turning to the same authority cited in Albritton v. State, supra, Underhill on Criminal Evidence, we find the statement that in prosecutions for breaking and entering 'nonconsent need not be proved by direct evidence, but may be inferred from the circumstances.' Even assuming that proof of lack of consent is

as indispensable to a conviction of breaking and entering as it is to one of larceny, which may well be doubted, still we hold that this nonconsent may be established by circumstantial evidence where one is prosecuted for committing the former offense." (Authorities cited.)

In Coates v. State, 36 Ala.App. 371, 56 So.2d 383, the court said:

"Since larceny is a criminal trespass on the right of possession, it is necessary that the taking should be without the consent of the possessor. The burden of proof of this essential element of the offense is on the prosecution. * * *. The element of nonconsent may be established by circumstantial evidence, as is the case of proof of any other factual issue. In the instant case this finding was addressed to the determination of the jury."

We are of opinion proof of lack of consent is not indispensable to a conviction of breaking and entering with intent to steal, but assuming that it is, such nonconsent may be established by circumstantial evidence. To paraphrase the language of the court in Johnson v. State, supra, we think the testimony thoroughly convincing that no consent was given here. It seems to us that it would approach the absurd to hold that positive and direct evidence on the point from Dr. Whitt would be necessary under the evidence adduced as to the breaking and entering and the shooting of the appellant by Dr. Whitt.

The evidence was sufficient to show a commission of the offense charged, and the defendant's guilty participation. The court properly refused the general charge both with and without hypothesis requested by the defendant. There was no error in overruling the motion for a new trial on the ground of the insufficiency of the evidence to sustain the verdict.

The court charged the jury:

"Now, Gentlemen, I want to dwell on this indictment for just a moment here to point out that it says, and these are the elements of the offense, and all of them must occur, *not at the same time or simultaneously,* (emphasis supplied by us) but all of them must occur before the Defendant could be found guilty as charged in the indictment, that is, that he did it in the nighttime with the intent to steal—that's 2—break into—that's 3—and enter—that's 4—and (sic) inhabited dwelling—that's 5. He must have done all those things before you could find him guilty under this charge, * * *."

The defendant reserved an exception to "that portion of the court's oral charge to the jury wherein the court instructed the jury in substance that all of the elements of the offense charged need not occur at the same time, that is, that they need not concur."

Our cases hold that the intent to steal (or commit a felony) must be concurrent with the breaking and entering. Jackson v. State, 102 Ala. 167, 15 So. 344, but that it is not essential that the breaking and entering be simultaneous. Mote v. State, 28 Ala.App. 68, 180 So. 110. The breaking may be at one time and the entry at another. Walker v. State, 63 Ala. 49. While it may be said that the meaning of this portion of the charge was vague and obscure, it was not a completely erroneous statement of the law. If defendant thought the charge had a tendency to mislead the jury his remedy was to request a special written instruction.

The court charged the jury as follows:

"If, after a consideration of all of the evidence, you are convinced beyond a reasonable doubt and to a moral certainty of the Defendant's guilt, then the form of your verdict would be: 'We, the Jury, find the Defendant guilty of burglary in the first degree and fix his punishment at imprisonment in the penitentiary for blank years;' or, 'We, the

Jury, find the Defendant guilty of burglary in the first degree and fix his punishment at death;' or, if you were finding the Defendant guilty of an attempt, 'We, the Jury, find the Defendant guilty of an attempt to commit burglary in the first degree.' But then, on the other hand, if, after a consideration of all of the evidence in the case, you are not *so reasonably satisfied* beyond a reasonable doubt and to a moral certainty of the guilt of the Defendant, then the form of your verdict would be, 'We, the Jury, find the Defendant not guilty.'" (Emphasis supplied.)

The defendant reserved an exception to "that portion of the court's oral charge wherein the court instructed the jury in substance that if the jury were not, 'reasonably satisfied' from the evidence that the defendant was guilty that the jury must return a verdict of not guilty, it being the position of the defendant that the jury would be required by the law to return a verdict of not guilty, unless it was satisfied from the evidence beyond a reasonable doubt and to a moral certainty that he was guilty of some crime of which he could be convicted under the indictment."

The argument in brief is:

"To be reasonably satisfied beyond a reasonable doubt of a defendant's guilt would not appear to amount to the same thing as to believe from the evidence beyond a reasonable doubt that a defendant is guilty, which accurately states the burden of proof carried by the prosecution in criminal cases. For the Jury to be 'reasonably satisfied from the evidence' is of course the burden of proof carried by the plaintiff in civil cases. To be 'reasonably satisfied' of a fact is one thing; to 'believe from the evidence beyond a reasonable doubt' is quite another. The two are repugnant to each other."

■ The measure of proof in a criminal case is that the jury be convinced beyond a reasonable doubt, not reasonably satisfied, of defendant's guilt. Jones v. State, 100 Ala. 88, 14 So. 772; Thomasson v. State, 21 Ala.App. 562, 110 So. 563.

■■ A charge authorizing conviction, if "satisfied" of defendant's guilt beyond a reasonable doubt, is not misleading, since the words "satisfied" and "convinced" have the same meaning. Words and Phrases, Permanent Edition, Vol. 38, p. 274; State v. Childs, 3 N.J.Misc. 3, 126 A. 678. The phrases, "beyond a reasonable doubt," and "to a moral certainty," are the legal equivalents of each other. Jones v. State, supra.

■ The inclusion of the word "reasonably" immediately before "satisfied" in the portion of the charge to which exception was reserved was error, but was not reversible error when followed as it was by the words "satisfied beyond a reasonable doubt and to a moral certainty of the guilt of the defendant," and when considered together with the court's instruction in another part of the charge that "the burden of proof is upon the State of Alabama to satisfy you from the evidence beyond a reasonable doubt and to a moral certainty that the defendant is guilty before you can convict him. He enters into this trial presumed to be innocent, and this presumption of innocence accompanies him and attends him throughout this trial and he is entitled to the benefit of this presumption until you are so satisfied from the evidence beyond a reasonable doubt and to a moral certainty that he is guilty of the offense of which he is charged in the indictment."

■ Sergeant Virgil E. Brady testified, he was employed as a police photographer for the Detective Division of the Huntsville Police Department and was acting in that capacity on May 22, 1965; that the photographs offered in evidence were taken by him and that they correctly depicted and portrayed the scene or the objects at the time they were taken. The photographs were properly admitted in evidence. Hines v. State, 260 Ala. 668, 72 So.2d 296.

We find no reversible error in the record. The judgment is affirmed.

Affirmed.

JOHNSON J., not sitting.

On Rehearing

PRICE, Presiding Judge.

We extend our original opinion by complying with the following quoted requests of appellant's attorney:

"1. By a statement that all of the evidence adduced in the trial court bearing upon proof of the corpus delicti is summarized in this Honorable Court's opinion affirming the judgment of conviction."

The evidence as to the corpus delicti is fully and substantially summarized in the opinion.

"2. By briefly describing the photographs, as to the admission of which into evidence error was assigned by Appellant on this appeal."

The photographs are attached to the transcript and are available for the consideration of the Supreme Court.

The photographer testified State's Exhibit 1 shows the den portion of the Whitt home. Exhibit 2 is "a photograph inside of the home pointing toward the rear door and also showing the doorway leading into the den." Exhibit 5 "is an outside view of the rear door. It also shows some small marks just below the door knob * * *." Exhibit 6 is "a photograph of the flower bed outside the back patio." Exhibit 7 is "a close-up photograph of the rear door partially open." Exhibit 13 "shows a portion of the driveway where it meets the garage door. * * * The photograph also contains a pair of white gloves laying at the base of the garage door." Exhibit 15 shows "just beyond the paved driveway at the rear of the home. * * * I photographed the screwdriver in this position in the yard, sir, a standing position." Exhibit 14 is "another view of the back yard, showing an additional screwdriver found at the scene." State's Exhibit 16 shows "a small flash light found in the driveway by itself. * * * Due to the size of the flash light

I put a six inch ruler beside it when I photographed it." Exhibit 3 shows "the base of the door between the den going out to the small area there where you go out through the back door. I don't know what room you call this, whether it is a utility room or what. But it is the door leading between those two rooms. It has a bullet hole in the base of the woodwork."

"3. By a statement that there was no extrinsic evidence adduced in the trial court tending to establish that the photographs portrayed the condition of the Whitt premises, and the objects shown in the photographs, as they appeared immediately after the alleged crime—only that they were correct portrayals at the time the photographs were made."

■ The evidence was that the offense was committed shortly after 9:00 o'clock. The photographer testified he arrived at the scene at 9:40 in response to a call from Detective Stephens and took the pictures as soon as he arrived. His testimony was sufficient to show that the photographs correctly depicted and portrayed the scene and the objects as they appeared immediately after the alleged crime. In Pinkerton v. State, 30 Ala.App. 103, 2 So.2d 323, relied on by appellant, the photographs were taken thirty days after the commission of the crime.

"4. By expressly ruling upon Appellant's Assignments of Error No. 6 and No. 7, relating to restriction by the trial court of Appellant's cross-examination of the witness Buford Whitt."

■ We quote from the record that portion of the testimony which includes the objections of the district attorney to two questions propounded to the witness, Whitt, and the court's rulings sustaining the objections:

"Q Did you make an inspection as to that area that you are testifying about immediately before you went to bed?

"A When I came home off of my last call those lights were on. I parked my car

in this side of the garage, right here. I walked back down this drive, closed these two 7-foot gates myself, came back up this drive, walked back through this garage door, closed the garage door, went in this door in the utility room, when through the utility room, and then back to my bedroom.

"Q You were getting ready for bed, you weren't making any inspection of the premises, trying to find out what might be lying out there on the driveway or on the ground?

"MR. THOMAS: We object to that as being argumentative.

"THE COURT: Sustained.

"MR. MANNING: We except.

"Q It is true that you did not make any inspection of that area, is it not, Doctor? I am talking about before the incident happened.

"A I would have noticed those gloves, had they been there.

"MR. MANNING: Now, we object, Your Honor, to the unresponsive answer.

"THE COURT; Answer his question, Dr. Whitt. Did you or did you not make an inspection of the area?

"A Well, I would say that I did inspect that drive as I came back up through there, because there was nothing on that concrete.

"Q You noticed nothing?

"A I know there was nothing on it, except a little pan about that big that the dogs drank out of.

"Q Dr. Whitt, you didn't walk along there and look at the driveway, did you?

"MR. THOMAS: We object.

"THE COURT: Sustained.

"MR. MANNING: We except. It's proper cross examination."

The questions were argumentative. The objections were properly sustained. The witness answered the questions by stating that he did inspect the driveway and noticed nothing on it. Defendant's right of cross examination was not restricted.

Opinion extended.

Application overruled.