689 So.2d 916 (1996)
Ex parte Joseph Ward GENTRY.
(Re Joseph Ward Gentry v. State).
1940471.
Supreme Court of Alabama.
July 12, 1996.
Rehearing Denied October 25, 1996.
*917 Randall S. Susskind, Montgomery; and William K. Delgrosso, Birmingham, for Petitioner.
Jeff Sessions, Atty. Gen., and Stephen N. Dodd, Asst. Atty. Gen., for Respondent.
ALMON, Justice.
This Court has granted the writ of certiorari as a matter of right to review the judgment of the Court of Criminal Appeals upholding Joseph Ward Gentry's capital murder conviction and death sentence. Rule 39(c), Ala. R.App. P. Gentry was convicted of the capital offense of murder committed during a burglary in the first degree, Ala. Code 1975, § 13A-5-40(a)(4). Our review concerns the scope of a defendant's "remaining unlawfully" in a dwelling (or other building) as an element of burglary. Specifically, if a person who has permission to be in a dwelling murders the occupant, has that person also committed burglary by virtue of "remaining unlawfully" in the dwelling, on the basis that the jury could infer from the fact that a struggle preceded the murder that the occupant must have revoked the person's permission to be there?
Gentry was convicted of capital murder for killing Kimberly Diane Hill "during a burglary." The Court of Criminal Appeals reversed that conviction and remanded the case for a second trial, based on error in allowing the jury to separate over Gentry's objection. Gentry v. State, 595 So.2d 548 (Ala.Crim.App.1991) (Gentry I). Gentry was retried and again convicted, and the Court of Criminal Appeals has affirmed the conviction and the sentence of death. The facts surrounding Gentry's crime and conviction are set forth in the Court of Criminal Appeals' opinions. See 595 So.2d 548 and Gentry v. State, 689 So.2d 894 (Ala.Crim.App.1994).
The circumstances allowing imposition of the death penalty have been limited by the United States Supreme Court. See, e.g., Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Godfrey v. Georgia, 446 U.S. 420, 427-28, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398, 406 (1980); Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Under the Eighth Amendment to the United States Constitution, capital murder statutes must "genuinely narrow" the class of persons eligible for the death penalty so that capital punishment is reserved for the most egregious crimes. Zant, supra, 462 U.S. at 877, 103 S.Ct. at 2742, 77 L.Ed.2d at 249-50. Standing alone, an intentional murder is not a capital crime. Something more must be established to elevate an intentional murder to a capital offense. Our statute defining capital offenses lists a number of circumstances that can cause an intentional murder to be treated as a capital murder. See § 13A-5-40(a)(1) through (a)(18), Ala. Code 1975. In Gentry's case, the State alleged and sought to prove a first-degree burglary as the additional element needed to make his crime a capital offense.
Gentry argues that the State failed to prove a burglary. The first-degree-burglary statute provides:
"(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in [the] dwelling or in immediate *918 flight therefrom, he or another participant in the crime:
"(1) Is armed with explosives or a deadly weapon; or
"(2) Causes physical injury to any person who is not a participant in the crime; or
"(3) Uses or threatens the immediate use of a dangerous instrument.
"(b) Burglary in the first degree is a Class A felony."
§ 13A-7-5, Ala. Code 1975 (emphasis added).[1] "A person `enters or remains unlawfully' in or upon premises when he is not licensed, invited or privileged to do so." § 13A-7-1(4), Ala. Code 1975. The language "remains unlawfully" is intended to cover cases where "a person enters with license or privilege but remains after termination of such license or privilege." Commentary, § 13A-7-1, Ala. Code 1975.
Gentry had Hill's consent to enter her apartment at any time, and he lawfully possessed a set of keys to her apartment. Hill and Gentry had been romantically involved, and Hill had provided Gentry with the keys to her apartment. Hence, the State does not contend that Gentry entered unlawfully, only that he "remained unlawfully." The circuit court instructed the jury that it could infer that Gentry had remained unlawfully in Hill's apartment from evidence of a struggle leading up to the murder:
"[T]he fact that the victim had terminated the defendant's license or privilege to be present in the victim's apartment can be inferred from the circumstances that a struggle took place."
(Emphasis added.) Thus, the evidence establishing the struggle and the ensuing murder is the very evidence used to establish a "burglary" and to make this killing a capital offense.
According to Gentry, this result is at odds with the plain language of the burglary statute; he also argues that the trial court's interpretation of our capital punishment statute as it relates to the offense of murder committed during a burglary is unconstitutional, in light of the United States Supreme Court decisions in Gregg, supra, Godfrey, supra, and Zant, supra. Gentry argues that the circuit court's interpretation of the burglary statute, as evidenced by the jury instruction, improperly elevates almost every intentional murder committed indoors into capital murder, and would likewise make virtually any crime committed indoors a burglary as well. Gentry contends that the State cannot properly use this interpretation to meet its burden of making out a prima facie case of first- or second-degree burglary as part of its proof necessary to elevate the crime to capital murder based on § 13A-5-40(a)(4), Ala. Code 1975.
The statutory crime of burglary as defined in § 13A-7-1 et seq. is broader than the narrowly defined common law crime of burglary, but it is instructive to consider the historical antecedent.
"Burglary was defined by the common law to be the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony. The offense was [composed] of narrowly defined elements in order to meet the specific needs and reasons for the offense.
". . . .
"The law was not ready to punish one who had been `invited' in any way to enter the dwelling. The law sought only to keep out intruders, and thus anyone given authority to come into the house could not be committing a breaking when he so entered."
W. LaFave and A. Scott, Handbook on Criminal Law, § 96, p. 708 (1972) (footnotes omitted).

*919 "Because breaking, as an element of common-law burglary, requires a breach of the building made by trespass, it cannot be established by the act of one who had authority to open that very door at that particular time. Thus one who has been provided a key with the unrestricted right to enter at any time does not commit a breaking even if he uses it on one occasion to gain entrance for the purpose of larceny."
R. Perkins and R. Boyce, Criminal Law, Ch. 3, § 1, p. 250 (3d ed. 1982) (footnotes omitted; emphasis in original).
Although the statute does away with the common law requirement of a "breaking" and allows a burglary conviction of one who merely "remains unlawfully," it does define the crime of "burglary" as an offense separate from the crime one intends to commit while in the building. Thus, "remaining unlawfully" must be proved by some evidence other than evidence that the defendant committed a crime while in the building. Burglary is often a more serious offense than the underlying crime, which may be only a misdemeanor. Thus, there must be some distinguishing element establishing a separate crime of burglary.
The commentary to § 13A-7-1 illustrates the intended operation of "remains unlawfully":
"The words `remain unlawfully' are designed to cover cases where a person enters with license or privilege but remains after termination of such license or privilege. Thus, a person who enters a department store during regular business hours and secretes himself in a public washroom until after the store is closed, `remains unlawfully' within the meaning of subdivision (4)."
In this example, the act of "secreting himself" is an act separate from the larceny that the person intends to later commit. Such a person knowingly remains in the store after it is closed to the public, knowing that his license or privilege to remain extends only until the time of closing.
Gentry points out that the statutory language "remains unlawfully," which appears throughout the Code sections dealing with burglary and trespass, was derived from the New York Revised Penal Law. See N.Y. Penal Law §§ 140.00, 140.30 (McKinney 1988); Commentary, § 13A-7-4, Ala. Code 1975. The New York courts have construed this provision as requiring more than evidence that the defendant committed a crime while on the premises:
"The People reason that a privilege to remain is necessarily conditioned on lawful purpose and behavior, because nobody consents to criminal acts on his or her premises. Thus, once a person with license engages in criminal behavior, consent and hence license is revoked, and the person who entered lawfully thereafter remains unlawfully.
"This reasoning impermissibly broadens the scope of liability for burglary, making a burglar of anyone who commits a crime on someone else's premises. It erroneously merges two separate and independent elements that must coexist to establish burglary: First, the trespassory element of entry or remaining without license or privilege; Second, intent to commit a crime. An intrusion without license or privilege (unlawful entry) is the distinguishing element, the essence of burglary. It must be established separately and distinctly from the intention to commit a crime. The mere fact that a crime was committed or was intended is an insufficient basis for finding that the entry or remaining was without privilege or authority."
People v. Hutchinson, 124 Misc.2d 487, 490, 477 N.Y.S.2d 965, 967 (Sup.Ct.1984), aff'd, 121 A.D.2d 849, 503 N.Y.S.2d 702 (1986), appeal dismissed, 68 N.Y.2d 770, 506 N.Y.S.2d 1054, 498 N.E.2d 156 (1986) (emphasis added); see People v. Gaines, 74 N.Y.2d 358, 546 N.E.2d 913, 916, 547 N.Y.S.2d 620 (1989); People v. Ludlowe, 117 Misc.2d 567, 458 N.Y.S.2d 833, 835 (Sup.Ct. 1983).
On the other hand, the State relies on a series of cases from the Court of Criminal Appeals that allow juries to infer the revocation of license or privilege simply from the evidence regarding the crime committed *920 within the building. See Stewart v. State, 601 So.2d 491 (Ala.Crim.App.1992) (citing Gentry I), aff'd on return to remand, 659 So.2d 120 (Ala.Crim.App.1992), aff'd in part, rev'd in part, Ex parte Stewart, 659 So.2d 122 (Ala.1993); Gentry I, supra; Moss v. State, 536 So.2d 129 (Ala.Crim.App.1988); Johnson v. State, 473 So.2d 607 (Ala.Crim. App.1985).
In Johnson v. State, 473 So.2d 607 (Ala. Crim.App.1985), Johnson was sentenced to life imprisonment for a capital murder committed during a burglary and a robbery. Johnson entered the victim's home under the pretext of wanting to use her telephone and, once inside, beat her to death and removed money from her purse. Id. In upholding Johnson's conviction, the Court of Criminal Appeals held that a termination of his license to remain on the victim's premises could be inferred from the circumstantial evidence of a struggle and a beating. 473 So.2d at 610. The court stated: "Clearly, the defendant `remained unlawfully' in the dwelling from the point at which he decided to commit a felony." 473 So.2d at 609.
In so holding, the Johnson court relied upon Davis v. State, 44 Ala.App. 284, 288, 207 So.2d 649, 653 (1967), cert. denied, 281 Ala. 718, 207 So.2d 656 (1968), for the proposition that non-consent, as an element of burglary, can be proven by circumstantial evidence. In both Johnson and Davis, the defendant and the victim did not know one another and the jury could have found that the defendant's initial entry was unlawful. Johnson, supra, at 608; Davis, 44 Ala.App. at 288, 207 So.2d at 651. In addition, the murder in Johnson occurred during a robbery as well as during a burglary; this fact also operates to elevate a murder to a capital offense. § 13A-5-40(a)(2), Ala. Code 1975.
The Court of Criminal Appeals followed this interpretation of the burglary statute in Moss v. State, 536 So.2d 129, 133-34 (Ala.Crim.App.1988). Moss was convicted of murder committed during a burglary, and, unlike the situation in Johnson, there was very little circumstantial evidence indicating that Moss's license to remain had been revoked or that he had made an unlawful entry.[2] Like Gentry, Moss used a key to enter the victim's apartment. However, the court ruled that evidence of the struggle and the murder was sufficient to support an inference that Moss had remained unlawfully. Moss, supra, at 133 (quoting at length from Johnson, 473 So.2d at 609-11).
In Stewart v. State, 601 So.2d 491 (Ala. Crim.App.1992), aff'd on return to remand, 659 So.2d 120 (Ala.Crim.App.1992), the Court of Criminal Appeals affirmed Stewart's conviction and death sentence for murder committed during the course of burglary and kidnapping. Stewart drove to his former wife's mobile home, and, after entering, he beat her, dragged her outside, and, in attempting to force her into his truck, shot and killed her. 601 So.2d at 496-97. Stewart did not knock on his former wife's door; instead, he "jarred the door open and went on in." 601 So.2d at 498. According to the Court of Criminal Appeals, this was sufficient evidence that Stewart entered unlawfully for purposes of the burglary conviction. Id. In dicta, the court indicated that Stewart could have been found guilty of burglary even if he had entered the mobile home lawfully, based on the "remains unlawfully" construction given the burglary statute in Johnson, supra, and Moss, supra. Id. However, our affirmance of the judgment of the Court of Criminal Appeals, as to Stewart's conviction, is not to be taken as approval of that dicta.
In Gentry I, 595 So.2d 548 (Ala.Crim.App. 1991), the Court of Criminal Appeals, after noting that all parties agreed that the judgment of the circuit court must be reversed because of the court's error in allowing the jury to separate, addressed the burglary statute's operation with regard to the "remains unlawfully" language. The court reiterated its holdings from Johnson and Moss, supra, and quoted at length the holding from *921 a Florida appellate court decision interpreting Florida's burglary statute. Gentry I, at 551-53 (quoting Ray v. State, 522 So.2d 963, 965-67 (Fla.Dist.Ct.App.1988), review denied, 531 So.2d 168 (Fla.1988)).
Although this Court denied Gentry's petition for the writ of certiorari after the first appeal to the Court of Criminal Appeals, Gentry I, 595 So.2d 548 (Ala.Crim.App.1991), the denial was not a ruling on the merits. Kilpatrick v. State, 291 Ala. 628, 285 So.2d 525 (1973). The denial of certiorari is particularly nondispositive of the merits of this issue because Gentry was seeking review of an adverse holding even though the judgment was in his favor, reversing his conviction.
Similarly, the Court of Criminal Appeals has cited this construction of "remains unlawfully" to uphold burglary convictions as such. See Glass v. State, 671 So.2d 114 (Ala.Crim.App.1995); Weaver v. State, 564 So.2d 1007, 1010 (Ala.Crim.App.1989); Minshew v. State, 542 So.2d 307 (Ala.Crim.App. 1988). In all of these cases, there was evidence that the initial entry was unlawful, and the court cited the Johnson line of cases only for an alternative holding that the defendant had remained unlawfully on the victim's premises.
We disagree with this interpretation. Now that the issue is squarely presented to us, we hold that to establish an "unlawful remaining" when the defendant has a license or privilege to be on the premises, the State must present evidence other than evidence that the defendant committed a crime in a dwelling or a building owned or controlled by the victim. To hold otherwise would vitiate the statutory elements of first- and second-degree burglary. Moreover, interpreting § 13A-5-7, Ala. Code 1975, as the State suggests would violate the constitutional limitations designed to reserve capital punishment for only the most egregious crimes, by expanding the scope of the death penalty to apply to intentional murders distinguishable from other intentional murders only because they occur indoors. Zant, supra.
To the extent that the above-cited opinions of the Court of Criminal Appeals are inconsistent with our holding in this case, those opinions are hereby overruled. See Stewart v. State, 601 So.2d 491 (Ala.Crim.App.1992), aff'd on return to remand, 659 So.2d 120 (Ala.Crim.App.1992), aff'd in part, rev'd in part, Ex parte Stewart, 659 So.2d 122 (Ala. 1993); Gentry I, 595 So.2d 548 (Ala.Crim. App.1991); Moss v. State, 536 So.2d 129 (Ala. Crim.App.1988); Johnson v. State, 473 So.2d 607 (Ala.Crim.App.1985); Glass v. State, 671 So.2d 114 (Ala.Crim.App.1995); Weaver v. State, 564 So.2d 1007, 1010 (Ala.Crim.App. 1989); Minshew v. State, 542 So.2d 307 (Ala. Crim.App.1988).
There is no evidence of a burglary in this case. Gentry simply used the key that Hill had given him to enter her apartment. When she returned home, he killed her. There was no separate crime of burglary simply because one could infer that she realized he was attacking her and therefore may or must have "revoked his privilege to remain." It was, therefore, error to instruct the jury that for purposes of determining whether the defendant had committed a burglary, "the fact that the victim had terminated the defendant's license or privilege to be present in the victim's apartment can be inferred from the circumstances that a struggle took place." This jury instruction had the effect of relieving the State of its burden of presenting a prima facie case of burglary. The burden is on the State to offer sufficient evidence to prove each element of a charged offense. Warren v. State, 292 Ala. 71, 288 So.2d 826 (1973).
For the foregoing reasons, the judgment of the Court of Criminal Appeals is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SHORES,[*] HOUSTON, KENNEDY, and COOK,[*] JJ., concur.
HOOPER, C.J., and MADDOX and BUTTS, JJ., dissent.
*922 MADDOX, Justice (dissenting).
I will begin by setting out the facts of this case. The Court of Criminal Appeals held that the state's evidence showed the following:
"The victim, Kimberly Diane Hill, and the appellant, who were involved in an affair, worked together at the Bank Operations Center of AmSouth Bank of Birmingham; the appellant was the shift manager and the victim's supervisor. On January 12, 1989, the day preceding the murder, they were to work the evening shift from 4:00 p.m. to 1:00 a.m. The appellant was married and had two children; Hill was a 24-year-old divorcee with no children. She had given the appellant keys to her apartment, and he was frequent visitor there. Hill became pregnant as a result of the relationship, and the appellant promised to divorce his wife and to marry her. On the day of the murder, the appellant complained of being ill, left work early, and went to Hill's apartment, where he removed his work clothes and put on a pair of `camouflage fatigues.' He waited in the dark for Hill to come home. When she entered the apartment, he grabbed her, beat her, and stabbed her repeatedly with a knife he had obtained from the kitchen. Then, when he observed that she was still moving, he bound her hands and feet with telephone cords and stuffed a towel down her throat. Before the appellant left the apartment, he opened the patio door, dumped the contents of Hill's purse on the floor, removed two rings from her fingers, and took other items from her jewelry box in an effort to make the crime appear as a `robbery attempt.' After leaving the apartment, the appellant discarded the `camouflage fatigues' and jewelry in various parts of the city by throwing them from his automobile, and he returned to his home. The appellant went to work later in the day on January 13, 1989, at the regular time and, when Hill did not arrive at work, he expressed concern regarding her whereabouts, asked several people to call and check on her, and eventually asked Hill's mother to go to the victim's apartment to check on her. Hill's mother went to her apartment, where she discovered her daughter's body.
"The autopsy revealed that the victim sustained 10 stab wounds, two incised wounds, and nine lacerations. The blade of the knife, which was left imbedded in her body, was 6-1/2" long. Her face was bruised, and her nose was broken. She died from multiple stab wounds and multiple blunt traumas. The autopsy also revealed that she was seven weeks pregnant.
"Much of the state's evidence consisted of facts first disclosed by the appellant's confession and later corroborated [by a co-worker and friend of the appellant]. The appellant gave a statement to police investigators on the day after the murder, admitting that he had killed the victim. This statement was tape-recorded and introduced into evidence by the state."
Gentry v. State, 689 So.2d 894, 898 (Ala.Crim. App.1994).
I was almost persuaded to concur with the opinion of the majority in its conclusion that "[t]here is no evidence of a burglary in this case," 689 So.2d at 921, and, therefore, no capital offense, because the defendant had a key to the victim's apartment. However, after reviewing the common law principles relating to burglary, and the provisions of Alabama's statute that make it a crime of burglary to remain unlawfully in a dwelling with intent to commit a crime therein,[3]I am now convinced that the Court of Criminal Appeals correctly held that the burglary *923 charge could be supported by proof of a nonconsensual remaining; thereby justifying the sentence of death for murder committed during the course of a burglary.[4] I am also convinced, based on the particular facts and circumstances proved in this case, that there was a "constructive breaking."
The facts show that the defendant committed a gruesome premeditated killing, and the gravamen of the offense of capital murder is an "intentional killing." Ex parte Kyzer, 399 So.2d 330 (Ala.1981); Beck v. State, 396 So.2d 645 (Ala.1980). In Kyzer, this Court, in discussing what constituted the "offense" and what constituted the "aggravation," said that "there is no disagreement in court decisions that the gravamen of the capital offense is the `intentional killing.'" 399 So.2d at 335. In Beck, this Court held that each of the capital crimes specified by the legislature "requires an intentional killing with aggravation, and not some crime other than homicide under aggravated circumstances." 396 So.2d at 662. (Emphasis omitted.) Thus the State must prove that there was an intentional killing with aggravation, which in this case is the burglary.
Common law burglary was an offense against habitation and was committed by the breaking and entering of the dwelling of another in the nighttime with intent to commit a felony therein. There were six elements: (1) the breach, (2) the entry, (3) the dwelling, (4) "of another," (5) the nighttime, and (6) burglarious intent. R. Perkins, Perkins on Criminal Law, p. 192, 195 (2d ed. 1969). The primary objective of the law of common law burglary and of burglary statutes was, and it still is, to conserve human life, not property. Reeves v. State, 245 Ala. 237, 240, 16 So.2d 699, 702 (1943).
The contest in this case between the State and the defendant is over whether the State proved a "breaking," because the defendant had a key to the apartment where the crime was committed. I believe that there was; hence, I dissent.
The question whether particular conduct constitutes a breaking has been presented in many cases for many, many years, involving many differing fact situations. The question has plagued judges, intrigued law professors, caused legal scholars to disagree, and frustrated law students trying to answer difficult law school examination questions on the subject.
Moreover, the question whether there is a breaking if the defendant has consent to enter the premises of another has been especially troublesome. This Court was called upon to address that question in Brown v. State, 55 Ala. 123 (1876), using common law principles without the benefit of a statute that addresses this particular situation. The facts in Brown, as set out in the report of the case, were:
"The defendant in this case was indicted for breaking and entering the drug-store of Dr. John Paul Jones in the town of Camden, with the intent to steal, and stealing money from the drawer. The evidence adduced on the trial, as to which there was no controversy, showed that he entered the store through the open door, and secreted himself behind the counter; that the clerk, having occasion to leave the *924 store, shut the windows, and closed and locked the door, leaving the defendant so secreted; and that the defendant, during the absence of the clerk, opened the money drawer, took from it between nine and ten dollars, and escaped through one of the back windows, which he opened. On this evidence, the defendant asked the court to charge the jury as follows: `If the jury believe, from the evidence, that the front door of the store was open, and, being open, the defendant entered, and secreted himself under the counter; and that the clerk of the store went out, and shut and locked the door, locking up the defendant in the store; and that the defendant, while thus locked up, took money out of the drawer, and went out of the house by opening a window,then the defendant would not be guilty of burglary as charged in the indictment.' The court gave this charge, but added to it the following explanation, or qualification: `If the jury find, from the evidence, that he so entered the house with the felonious intent to secrete himself therein for the purpose of stealing therefrom, then it would, in legal contemplation, constitute breaking the house;' to which explanation, or qualification, the defendant excepted."
55 Ala. at 123-24.
This Court said:
"The Revised Code (§ 3695) declares, that `any person who, either in the night or day time, with intent to steal, or to commit a felony, breaks into and enters a dwelling house, or any building within the curtilage of a dwelling house, though not forming a part thereof; or into any shop, store, ware-house, or other building, in which any goods, merchandise or other valuable thing is kept for use, sale, or deposit, is guilty of burglary,' & c. It will be observed that this offense naturally divides itself into three constituent elements; the character of the house, the breaking into it, and the intent with which he entered the house. On the first and third of these constituents, there seems to have been no dispute in this case. The contest was over the second. The undisputed evidence is, that the front door of the store, in which the offense is alleged to have been committed, was open; that the defendant entered the house through said open door, secreted himself in the store, and, when the store was closed and locked, the defendant was locked in. Afterwards, the defendant, being in the store, committed the larceny spoken of, and, opening or breaking a window, escaped with the money stolen. The question for our decision is, does this amount to a breaking into the store, within the statute?
"The cases of Donohoo v. The State, 36 Ala. 281, and Walker v. The State, 52 Ala. 376, are relied on in support of the charge in this case. In the case of Walker, as in this case, there was a breaking out; but the prisoner was not adjudged guilty on that account. In each of those cases, the entry was by way of the chimney, which is uniformly held to be a sufficient breaking and entering to constitute that element of the crime of burglary. On that principle were the defendants adjudged guilty in the two cases cited. There must be an actual breaking, or a constructive breaking, by fraud, threats, or conspiracy. 3 Greenl. Ev. § 76. In England, they have a statute, which makes the escaping from a house, by breaking, etc., after committing a felony in the house, burglary in the offender. We have no such statute here. See Com. v. Strupney, 105 Mass. 588 [7 Am. Rep. 556]; Roscoe's Cr. Ev. 347."
Brown, 55 Ala. at 124-25. (Emphasis added.)
I do not know which English statute this Court was referring to in Brown, but R. Perkins, in his treatise on criminal law, states that "[a]n English statute in 1713 provided that one who entered without breaking should be guilty of burglary if he broke out of the place, provided all other elements of the crime were present." R. Perkins, Perkins on Criminal Law, p. 197 (2d ed. 1969).[5]
*925 It is probable that this Court was referring to the English statute cited as 12 Anne c. 7, which reads: "`that if any person shall enter into the mansion or dwelling house of another by day or by night, without breaking the same, with an intent to commit felony; or, being in such house, shall commit any felony; and shall in the night-time break the said house to get out of the same,'it shall be burglary."[6] The effect of that statute, according to legal scholars, "made it burglary for a person to enter without breaking, with intent to commit a felony, or, being in the house, to commit any felony, and then in the nighttime break out of the house." 1 Brill, Cyclopedia of Criminal Law § 472 (1922).
It is my opinion that when this Court, in Brown, stated that "[i]n England, they have a statute, which makes the escaping from a house, by breaking, etc., after committing a felony in the house, burglary in the offender," and that "[w]e have no such statute here," the Court clearly implied that the conviction in Brown would have been upheld if Alabama had had such a statute on the books. Alabama now has such a statute, and I believe that Brown clearly supports the proposition that the conduct by the defendant in this case constituted "burglary in the offender." This conclusion is based upon my review of the principles of common law burglary and Alabama case law relating to common law burglary, as modified by statute. Moss v. State, 536 So.2d 129 (Ala.Cr.App. 1988), and Minshew v. State, 542 So.2d 307 (Ala.Cr.App.1988).
In conclusion, it appears to me that there was overwhelming evidence that the defendant, even though he had a key to the victim's apartment, formed an intent, before he entered, to kill the victim and carried out that intent after he gained entry and lay in wait. If there was ever a set of facts proving a premeditated and gruesome killing deserving of the death penalty, this case presents it. I realize that the State was required to prove the aggravated circumstance, i.e., that the intentional killing was committed during a burglary, but it appears to me that the defendant's conduct in this case, whether described as "constructive breaking," "breaking out" or "unlawfully remaining," constitutes burglary in the first degree as defined by our current Criminal Code[7] and thus makes this particular murder a capital offense;[8] consequently, I would affirm the judgment of the Court of Criminal Appeals.
HOOPER, C.J., concurs.
NOTES
[1] The definition of burglary in the second degree in § 13A-7-6(a) is virtually identical except that it uses the word "building" where § 13A-7-5(a) uses the word "dwelling" and uses the phrase "theft or a felony" where § 13A-7-5(a) uses the word "crime." Thus, the question of "remaining unlawfully" may pertain to a "building" as well as to a "dwelling." A capital murder prosecution can be based on a murder that occurs during a second-degree burglary. § 13A-5-40(a)(4). When discussing the application of "remains unlawfully" in general, we will speak broadly of remaining in a "building" with intent to commit a "crime," so as to encompass both first- and second-degree burglary.
[2] Both Moss and Johnson were sentenced to life imprisonment without possibility of parole, so neither of their appeals came to this Court for plain-error review, see Rule 45A, Ala. R.App. P., as they would have if the defendants had been sentenced to death. This Court denied certiorari petitions in both cases, but the denial of certiorari review is not a ruling on the merits. Kilpatrick v. State, 291 Ala. 628, 285 So.2d 525 (1973).
[*] Although Justice Shores and Justice Cook were not present for oral argument, they have listened to the tape of oral argument.
[3] § 13A-7-5, Ala. Code 1975:

"Burglary in the first degree.
"(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in [a] dwelling or in immediate flight therefrom, he or another participant in the crime:
"(1) Is armed with explosives or a deadly weapon; or
"(2) Causes physical injury to any person who is not a participant in the crime; or
"(3) Uses or threatens the immediate use of a dangerous instrument.
"(b) Burglary in the first degree is a Class A felony." Source: Acts 1977, No. 607, p. 812, § 2610; Acts 1979, No. 79-471, p. 862, § 1.
[4] The Court of Criminal Appeals, noting that the defendant had raised in his first trial and in his first appeal the same issue now presented, said the following:

"[W]e ruled against him, Gentry v. State, 595 So.2d 548 (Ala.Cr.App.1991), cert. denied, 595 So.2d 548 (Ala.Cr.App.1992), relying on Moss v. State, 536 So.2d 129 (Ala.Cr.App.1988), and Minshew v. State, 542 So.2d 307 (Ala.Cr.App. 1988). We held in Gentry that even if the entry was consensual, a burglary charge could be supported by a nonconsensual remaining and the fact that the victim terminated the appellant's license or privilege to remain on the premises can be inferred where, as here, a struggle took place and the victim was beaten. We further held that the trial court properly submitted to the jury the issue of whether the appellant entered or remained unlawfully in the victim's apartment. The evidence presented at both trials is substantially the same. No new evidence was presented in the second trial of the case that would cause us to change our earlier opinion on this issue. The authorities cited by the appellant on this second appeal in support of his contention are no more persuasive than those cited on his first appeal. We reaffirm and adopt our prior holding on this issue. The trial court's denial of the motion for a judgment of acquittal on this ground was proper. The trial court properly submitted the issue to the jury."
689 So.2d at 905.
[5] Perkins, in a footnote to this statement that I quote from his treatise, cited the English statute in 1713 as 12 Anne c. 7, and included this comment: "There have been some suggestions that this statute merely removed a doubt and actually codified the common law. See 2 Bishop, New Criminal Law § 99 (8th ed. 1892)." But he also noted, "Hale says it was not burglary. 1 Hale P.C. 554." Perkins commented that "[i]t is believed that the notion of substituting a `breaking out' for a `breaking in,' so far as common-law burglary is concerned, grew out of misinterpretations of statements dealing with breaking into an inner room." There are cases that apply a "constructive breaking" analysis. In State v. Howard, 64 S.C. 344, 42 S.E. 173 (1902), a servant who had the right to lodge in his master's dwelling, but who being outside came in either by opening the door or by raising the sash, not with intent to lodge therein but with intent to steal, and actually stole and carried away his master's goods, committed burglary. In Davis v. Commonwealth, 132 Va. 521, 110 S.E. 356 (1922), the court held that a breaking, as an element of the crime of burglary, could be either actual or constructive.
[6] 2 Bishop, New Commentaries on The Criminal LawThe Specific Offenses § 99 (1892), quoting 12 Anne, stat. 1, c. 7, § 3 (1713), and 1 Hawk. P.C. Curw. ed. p. 132, § 15; 2 East P.C. 489.
[7] § 13A-7-5, Ala. Code 1975.
[8] § 13A-5-40(a)(4), Ala. Code 1975