Joseph Ward Gentry, the appellant, was convicted for the capital offense involving burglary and the intentional murder of Kimberly Diane Hill, in violation of Ala. Code 1975, §13A-5-40(a)(4). The jury recommended the death penalty. The trial court sentenced the appellant to death by electrocution.
 I.
This is an extremely unusual case in that all the parties involved — the appellant, the trial judge, the assistant district attorney who represented the State at trial, and the attorney general, who represents the State on appeal — admit that the appellant's conviction must be reversed because the trial judge allowed the jury to separate over the objections of the appellant and in violation of Ala. Code 1975, § 12-16-9(a), which provides in pertinent part:
 "If the accused and his counsel and also the prosecuting attorney, in any prosecution for a capital felony consent thereto in open court, the trial court in its discretion may permit the jury trying the case to separate during the pendency of the trial, whether the jury has retired or not."
See also Rule 19.3(a)(1), A.R.Crim.P., which, we recognize, was not applicable when the appellant was tried.
By letter dated August 23, 1991, the attorney general requests this Court to "enter a summary order reversing the conviction and sentence on the issue of jury separation, and remand the cause for a new trial." When a reversal is required on one ground, this Court need not consider other issues that would not arise on another trial. See Wilson v. State, 195 Ala. 675,680, 71 So. 115, 118 (1916). Therefore, this Court will not address most of the issues raised on this appeal. However, there remain other issues which demand comment because, in all probability, they will be encountered in any new trial that the appellant might face. *Page 550 
 II.
The appellant argues that he could not be guilty of burglary as a matter of law because he had the victim's consent to enter her residence.
The indictment charged, in pertinent part, that the appellant intentionally killed the victim
 "during the time that [the appellant] knowingly and unlawfully entered or remained, or attempted to enter or remain unlawfully in the dwelling of Kimberly Diane Hill with intent to commit murder, and the said [appellant] did cause physical injury to Kimberly Diane Hill by the said stabbing with a knife and by beating with a blunt object." R. 1234.
In sentencing the appellant to death, the trial judge made the following finding of facts:
 "The victim in this case, Kimberly Diane Hill, was a 24-year-old female that had worked with the defendant at a local bank. The defendant had worked in a supervisory capacity over the victim and after some period of time [of] working together, the victim and the defendant developed an intimate relationship. During this relationship the victim had given the defendant a set of keys to her apartment and the defendant had apparently used the keys for some period of time prior to January 13, 1989. Approximately two weeks before Christmas of the preceding year the defendant was advised by the victim that she was pregnant by him which caused the defendant much concern as he was presently married with two children of his own. In subsequent conversation with the victim, the defendant advised her that he would divorce his wife and move in with her to raise their child that she was expecting. The defendant further told the victim that he would leave his wife after the Christmas holidays and as soon as he had celebrated his child's birthday in January.
 "On the date of the murder the defendant and the victim had worked together; however, the defendant left work early that day advising everyone that he was ill and was going home. Instead of going home, the defendant went to the victim's apartment and waited for her to arrive. On her arrival the defendant stated that he surprised the victim and on being surprised she struck him in the chest and as a result a fight between the two parties occurred. During the course of the struggle the victim was severely beaten and stabbed numerous times and was ultimately tied with her hands and feet together and a towel stuffed into the victim's mouth. The defendant further stated that at the time he left the victim in her apartment that she was possibly still alive. The defendant, leaving the victim in this condition, went to his home and returned to work at his regular shift later that day. When the victim did not arrive at work he stated much concern as to her whereabouts and ultimately caused the victim's mother to go check on her and she found the victim dead in her apartment from the wounds caused by the defendant. In subsequent questioning by police officers the defendant ultimately admitted his participation in the death of the victim.
 "The coroner/medical examiner testified that the victim was seven (7) weeks pregnant and that the cause of death was multiple blunt force trauma and multiple stab wounds.
 "The defendant testified in his own behalf and stated that he had indeed gone to the victim's apartment that night and had gone there only to surprise her and further to find out if something was bothering her concerning their ultimate plans for marriage. He stated that when he did surprise the victim that she struck him in the chest and it caused considerable pain to which he reacted and snapped and after that he can remember very little of what else occurred on that occasion. The defendant further stated that he did not know how many times he had stabbed the victim. The defendant further presented evidence of the defendant's wife wherein she testified that the defendant was a devoted father and had never mistreated her or the family in any way." R. 1265-67. *Page 551 
The crime of burglary in the first degree is defined by Ala. Code 1975, § 13A-7-5(a).
 "To establish burglary the prosecution must prove: (1) The intruder 'entered or remained unlawfully,' as that term is defined in § 13A-7-1(4). There is no requirement that a technical breaking be established, although the use of force in effectuating entry is highly relevant on the issue of license or privilege, as well as the mental culpability required. (2) The intruder 'knowingly' entered or remained unlawfully. See § 13A-2-2(2). This means that the intruder must be aware of the fact that he has no license or privilege to enter or remain. (3) The invaded premises constitute a 'building.' (4) The intruder had an intent to commit theft or felony (required for 1st or 2nd degree), or any crime (required for 3rd degree)."
Commentary to §§ 13A-7-5 through 13A-7-7.
This issue involves primarily the interpretation of the phrase "remains unlawfully in a dwelling." "A person 'enters or remains unlawfully' in or upon premises when he is not licensed, invited or privileged to do so." Ala. Code 1975, §13A-7-1(4).
 "Under § 13A-7-1(4), a person 'enters or remains unlawfully' when he is not licensed or privileged to do so. (For discussion of what constitutes license or privilege to enter or remain upon premises, see Restatement of the Law of Torts, Second, Chapter 8, Privileged Entries on Land.) A person who is licensed or privileged to enter premises cannot, therefore, commit criminal trespass or burglary under the proposal. Of course, a person who gains admittance through intimidation, deception, trick or artifice does not enter with 'license or privilege.'
 "The words 'remain unlawfully' are designed to cover cases where a person enters with license or privilege but remains after termination of such license or privilege. Thus a person who enters a department store during regular business hours and secretes himself in a public washroom until after the store is closed, 'remains unlawfully' within the meaning of subdivision (4)."
Commentary to § 13A-7-1. See also 12A C.J.S. Burglary § 24(a) (1980).
This Court adheres to the interpretation of the phrase "unlawfully remains" found in Moss v. State, 536 So.2d 129,133-34 (Ala.Cr.App. 1988), Minshew v. State, 542 So.2d 307,311-12 (Ala.Cr.App. 1988), and Johnson v. State, 473 So.2d 607,609-10 (Ala.Cr.App. 1985), that the fact that the victim terminated the defendant's license or privilege to remain on the premises can be inferred where a struggle took place and the victim was beaten.
The common law requirement that there be a "breaking" has been omitted from the definition of burglary under the Alabama Criminal Code. "The primary objective of burglary statutes should be to conserve human life and not property merely,Reeves v. State, 245 Ala. 237, 16 So.2d 699 (1943), and there is no essential purpose served by retaining a technical breaking requirement." Commentary to §§ 13A-7-5 through13A-7-7. "Once a consensual entry has occurred, a burglary charge still may be grounded in a nonconsensual 'remaining in' the structure." Thorpe v. State, 559 So.2d 1285, 1286
(Fla.App. 1990). We find persuasive the reasoning expressed inRay v. State, 522 So.2d 963 (Fla.App.) review denied,531 So.2d 168 (Fla. 1988).
 "The phrase 'remaining in' has been interpreted as proscribing an act distinct from that of entering. In Routly v. State, 440 So.2d 1257
(Fla. 1983), [cert. denied, 468 U.S. 1220, 104 S.Ct. 3591, 82 L.Ed.2d 888 (1984)], the court rejected, as being without merit, the defendant's contention that because he had lawfully entered the decedent's home at the outset, there could be no burglary. The court held that '[t]he burglary statute is satisfied when the defendant "remains in" a structure with the intent to commit an offense therein. Hence, the unlawful entry is not a requisite element.' Id. at 1262. See State v. Belton, 190 Conn. 496, 500, 461 A.2d 973, 976
(1983) ('To enter unlawfully contemplates an entry *Page 552 
which is accomplished unlawfully, while to remain unlawfully contemplates an initial legal entry which becomes unlawful at the time the actor's right, privilege or license to remain is extinguished.') (footnote omitted). The interpretation given the statute in Routly complies with the rule of statutory construction that, if possible, meaning should be ascribed to all words in a statute. Moreover, such an interpretation follows from the holding that consent is a recognized defense to a charge of unlawful entry in this state. See State v. Hicks, 421 So.2d 510 (Fla. 1982); note 3, supra. Since, as the State concedes, the evidence is undisputed that [the victim] consented to Ray's entering the premises, the issue we must address is whether the evidence supports the jury's necessary, albeit implicit, finding that [the victim's] consent to Ray's remaining in the premises was withdrawn. Otherwise stated, once consensual entry is complete, a consensual 'remaining in' begins, and any burglary conviction must be bottomed on proof that consent to 'remaining in' has been withdrawn.[5]
 "It is undeniably true that a person would not ordinarily tolerate another person remaining in the premises and committing a crime, and that when a victim becomes aware of the commission of a crime, the victim implicitly withdraws consent to the perpetrator's remaining in the premises. Thus, in Hambrick v. State, 174 Ga. App. 444, 330 S.E.2d 383 (1985), the court held that a jury question was presented regarding whether the victim's struggle with the defendant indicated withdrawal of consent to be on the premises, which would render unauthorized the defendant's remaining there.
 " 'With regard to burglary, Hambrick argues that the evidence is undisputed that he had authority to enter. While that is true, it does not end the matter. . . . When Hambrick's ulterior purpose beyond the bonds of a friendly visit became known to Arrington [the victim — Hambrick's elderly stepgrandfather], who was the source of the authority, and he reacted against it, a reasonable inference could be drawn that the authority to remain ended. Arrington did not have to shout "Get out!" for this to be so. Yet Hambrick remained until he got possession of the money, far beyond the time at which the scope of the permission ended.' Hambrick v. State, 330 S.E.2d at 385-86.
 "Likewise, in Johnson v. State, 473 So.2d 607
(Ala.Crim.App. 1985), the court held that for the purpose of satisfying the requirement that the defendant enter or remain unlawfully, the occupant's consent is terminated when the defendant knows or has reason to know that the occupant no longer wants the defendant to remain. Finding that non-consent could be proved by circumstantial evidence, the court inferred that the murder victim had terminated the defendant's license to remain from the circumstances of the brutal murder: there were obvious signs of struggle and the victim had been severely beaten. See also People v. Powell, 58 N.Y.2d 1009, 448 N.E.2d 797, 461 N.Y.S.2d 1012
(1983) (burglary conviction sustained where jury could find that though defendant's entry was lawful, he was not licensed to remain because it was apparent from the time of day and absence of people that the offices were no longer open to the public); People v. Racanelli, 132 Ill. App.3d 124, 87 Ill.Dec. 187, 476 N.E.2d 1179 (1985) (although defendants' entry into apartment was initially with the victim's consent, attack on the victim and removal of his property sufficient evidence that consent had been withdrawn, making subsequent remaining in unlawful); Tribbett v. Commonwealth, 561 S.W.2d 662 (Ky. 1978) (defendant remained unlawfully after murder of occupant caused defendant's license to lapse).
 "In the present case, the evidence demonstrates without question that [the victim] verbally and physically resisted the defendant's assault. As in Hambrick, 330 S.E.2d 383, we will not require that [the victim] have yelled to the defendant, 'Get out!' before we can conclude that the defendant's license to remain on the *Page 553 
premises was withdrawn. As the legislative changes indicate, Florida's modern burglary statute focuses on the safety of people and property, Toole v. State, 472 So.2d 1174 (Fla. 1985); Anderson v. State, 356 So.2d 382 (Fla. 3d DCA 1978), and these policies are clearly implicated in this case. See State v. Cochran, 191 Conn. 180, 463 A.2d 618
(1983) (potential terror of burglary not lacking even though 'burglar' was invited in). Therefore, we agree with the State that [the victim's] struggle with the defendant was sufficient evidence that she withdrew her consent to Ray's remaining in the premises, making his remaining in the premises after the withdrawal a burglary.
Ray, 522 So.2d at 965-67.
Based on the above, we conclude that the trial judge properly submitted the issue of whether the appellant entered or remained unlawfully in the victim's apartment to the jury.
 III.
We are compelled to make the following comments in the event of a new trial.
Evidence of the fact that the victim was pregnant with the appellant's child was highly relevant and was properly admissible to prove the appellant's motive in committing the charged offense despite the fact that this evidence was also highly prejudicial to the appellant. See generally, C. Gamble,McElroy's Alabama Evidence § 45.01(1) and (8) (4th ed. 1991). This is not a case were relevant evidence "would serve comparatively little or no purpose except to arouse the passion, prejudice or sympathy of the jury." McElroy's § 21.01(4).
In determining whether a venire member should be disqualified for cause, we direct the trial court's attention to Wood v.Woodham, 561 So.2d 224 (Ala. 1990), and Knop v. McCain,561 So.2d 229 (Ala. 1989). We especially recommend the case of Noddv. State, 549 So.2d 139 (Ala.Cr.App. 1989), approved in Ex parteWebb, 586 So.2d 954 (Ala. 1991).
In light of Golden v. State, 439 So.2d 813 (Ala.Cr.App. 1983), this Court expresses concern over the admission of State's Exhibit No. 2, a box of knives allegedly found in the victim's closet by the victim's brother some time after the police had completed their investigation. The actual murder weapon was, according to the theory presented by the prosecution, a knife from this box. However, because the murder weapon was discovered protruding from the victim's body, the evidentiary value of State's Exhibit No. 2 is questionable. In a new trial, the prosecution would do well to weigh that value against the tenuous nature of the chain of custody and the possibility of injecting error into the trial.
The admission of photographs of the victim's wounds should be governed by the principles set out in Ex parte Bankhead,585 So.2d 112 (Ala. 1991).
We decline to address the other issues raised by the appellant on this appeal even though it is likely that some of those issues may be encountered in the event of a new trial. Those issues have been thoroughly briefed by both the appellant and the State on this appeal. Therefore, should those *Page 554 
same issues be presented at any new trial, the prosecution should be better prepared to meet the appellant's objections, and the appellant should be better prepared to challenge the State's evidence.
The judgment of the circuit court is reversed and this cause is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
All Judges concur.
[5] "Because we conclude that the evidence supports the jury's implicit finding that the victim withdrew her consent to the defendant's remaining in the premises, we need not reach the State's broader, alternative argument that the defendant's conviction can be bottomed simply on his remaining in the premises while possessing the requisite criminal intent. But see State v. Thibeault, 402 A.2d 445 (Me. 1979), in which the court rejected the state's invitation to construe the statute to mean that the mere existence of the requisite criminal intent after a lawful entry ipso facto constituted a withdrawal of the occupant's consent to remain. The court held that 'the result would be, for all practical purposes, the expungement of the "license" language from the statute. If [this] argument is accepted, a burglary defendant would have to prevail on the question of his intent to commit a crime in order to prevail on the "license . . ." issue.' Id. at 449 (footnote omitted). Indeed, New York's statute was amended to overrule case law espousing this very concept and now requires a 'direct and personal order to leave' before the defendant's presence becomes a burglary. N.Y. Penal Law § 140.00 (McKinney 1975 
Supp. 1988); People v. Hutchinson, 124 Misc.2d 487,477 N.Y.S.2d 965 (Sup.Ct. 1984), aff'd, 121 A.D.2d 849, 503 N.Y.S.2d 702
(1986)."