This Court has granted the writ of certiorari as a matter of right to review the judgment of the Court of Criminal Appeals upholding Joseph Ward Gentry's capital murder conviction and death sentence. Rule 39(c), Ala. R.App. P. Gentry was convicted of the capital offense of murder committed during a burglary in the first degree, Ala. Code 1975, § 13A-5-40(a)(4). Our review concerns the scope of a defendant's "remaining unlawfully" in a dwelling (or other building) as an element of burglary. Specifically, if a person who has permission to be in a dwelling murders the occupant, has that person also committed burglary by virtue of "remaining unlawfully" in the dwelling, on the basis that the jury could infer from the fact that a struggle preceded the murder that the occupant must have revoked the person's permission to be there?
Gentry was convicted of capital murder for killing Kimberly Diane Hill "during a burglary." The Court of Criminal Appeals reversed that conviction and remanded the case for a second trial, based on error in allowing the jury to separate over Gentry's objection. Gentry v. State, 595 So.2d 548
(Ala.Crim.App. 1991) (Gentry I). Gentry was retried and again convicted, and the Court of Criminal Appeals has affirmed the conviction and the sentence of death. The facts surrounding Gentry's crime and conviction are set forth in the Court of Criminal Appeals' opinions. See 595 So.2d 548 and Gentry v. State, 689 So.2d 894
(Ala.Crim.App. 1994).
The circumstances allowing imposition of the death penalty have been limited by the United States Supreme Court. See,e.g., Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909,49 L.Ed.2d 859 (1976); Godfrey v. Georgia, 446 U.S. 420, 427-28,100 S.Ct. 1759, 1764, 64 L.Ed.2d 398, 406 (1980); Zant v. Stephens,462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Under the Eighth Amendment to the United States Constitution, capital murder statutes must "genuinely narrow" the class of persons eligible for the death penalty so that capital punishment is reserved for the most egregious crimes. Zant, supra,462 U.S. at 877, 103 S.Ct. at 2742, 77 L.Ed.2d at 249-50. Standing alone, an intentional murder is not a capital crime. Something more must be established to elevate an intentional murder to a capital offense. Our statute defining capital offenses lists a number of circumstances that can cause an intentional murder to be treated as a capital murder. See § 13A-5-40(a)(1) through (a)(18), Ala. Code 1975. In Gentry's case, the State alleged and sought to prove a first-degree burglary as the additional element needed to make his crime a capital offense.
Gentry argues that the State failed to prove a burglary. The first-degree-burglary statute provides:
 "(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in [the] dwelling or in immediate *Page 918 
flight therefrom, he or another participant in the crime:
 "(1) Is armed with explosives or a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime; or
 "(3) Uses or threatens the immediate use of a dangerous instrument.
 "(b) Burglary in the first degree is a Class A felony."
§ 13A-7-5, Ala. Code 1975 (emphasis added).[1] "A person 'enters or remains unlawfully' in or upon premises when he is not licensed, invited or privileged to do so." § 13A-7-1(4), Ala. Code 1975. The language "remains unlawfully" is intended to cover cases where "a person enters with license or privilege but remains after termination of such license or privilege." Commentary, § 13A-7-1, Ala. Code 1975.
Gentry had Hill's consent to enter her apartment at any time, and he lawfully possessed a set of keys to her apartment. Hill and Gentry had been romantically involved, and Hill had provided Gentry with the keys to her apartment. Hence, the State does not contend that Gentry entered unlawfully, only that he "remained unlawfully." The circuit court instructed the jury that it could infer that Gentry had remained unlawfully in Hill's apartment from evidence of a struggle leading up to the murder:
 "[T]he fact that the victim had terminated the defendant's license or privilege to be present in the victim's apartment can be inferred from the circumstances that a struggle took place."
(Emphasis added.) Thus, the evidence establishing the struggle and the ensuing murder is the very evidence used to establish a "burglary" and to make this killing a capital offense.
According to Gentry, this result is at odds with the plain language of the burglary statute; he also argues that the trial court's interpretation of our capital punishment statute as it relates to the offense of murder committed during a burglary is unconstitutional, in light of the United States Supreme Court decisions in Gregg, supra, Godfrey, supra, and Zant, supra.
Gentry argues that the circuit court's interpretation of the burglary statute, as evidenced by the jury instruction, improperly elevates almost every intentional murder committed indoors into capital murder, and would likewise make virtually any crime committed indoors a burglary as well. Gentry contends that the State cannot properly use this interpretation to meet its burden of making out a prima facie case of first- or second-degree burglary as part of its proof necessary to elevate the crime to capital murder based on § 13A-5-40(a)(4), Ala. Code 1975.
The statutory crime of burglary as defined in § 13A-7-1 et seq. is broader than the narrowly defined common law crime of burglary, but it is instructive to consider the historical antecedent.
 "Burglary was defined by the common law to be the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony. The offense was [composed] of narrowly defined elements in order to meet the specific needs and reasons for the offense.
". . . .
 "The law was not ready to punish one who had been 'invited' in any way to enter the dwelling. The law sought only to keep out intruders, and thus anyone given authority to come into the house could not be committing a breaking when he so entered."
W. LaFave and A. Scott, Handbook on Criminal Law, § 96, p. 708 (1972) (footnotes omitted). *Page 919 
 Because breaking, as an element of common-law burglary, requires a breach of the building made by trespass, it cannot be established by the act of one who had authority to open that very door at that particular time. Thus one who has been provided a key with the unrestricted right to enter at any time does not commit a breaking even if he uses it on one occasion to gain entrance for the purpose of larceny."
R. Perkins and R. Boyce, Criminal Law, Ch. 3, § 1, p. 250 (3d ed. 1982) (footnotes omitted; emphasis in original).
Although the statute does away with the common law requirement of a "breaking" and allows a burglary conviction of one who merely "remains unlawfully," it does define the crime of "burglary" as an offense separate from the crime one intends to commit while in the building. Thus, "remaining unlawfully" must be proved by some evidence other than evidence that the defendant committed a crime while in the building. Burglary is often a more serious offense than the underlying crime, which may be only a misdemeanor. Thus, there must be some distinguishing element establishing a separate crime of burglary.
The commentary to § 13A-7-1 illustrates the intended operation of "remains unlawfully":
 "The words 'remain unlawfully' are designed to cover cases where a person enters with license or privilege but remains after termination of such license or privilege. Thus, a person who enters a department store during regular business hours and secretes himself in a public washroom until after the store is closed, 'remains unlawfully' within the meaning of subdivision (4)."
In this example, the act of "secreting himself' is an act separate from the larceny that the person intends to later commit. Such a person knowingly remains in the store after it is closed to the public, knowing that his license or privilege to remain extends only until the time of closing.
Gentry points out that the statutory language "remains unlawfully," which appears throughout the Code sections dealing with burglary and trespass, was derived from the New York Revised Penal Law. See N.Y. Penal Law §§ 140.00, 140.30 (McKinney 1988); Commentary, § 13A-7-4, Ala. Code 1975. The New York courts have construed this provision as requiring more than evidence that the defendant committed a crime while on the premises:
 "The People reason that a privilege to remain is necessarily conditioned on lawful purpose and behavior, because nobody consents to criminal acts on his or her premises. Thus, once a person with license engages in criminal behavior, consent and hence license is revoked, and the person who entered lawfully thereafter remains unlawfully.
 "This reasoning impermissibly broadens the scope of liability for burglary, making a burglar of anyone who commits a crime on someone else's premises. It erroneously merges two separate and independent elements that must coexist to establish burglary: First, the trespassory element of entry or remaining without license or privilege; Second, intent to commit a crime. An intrusion without license or privilege (unlawful entry) is the distinguishing element, the essence of burglary. It must be established separately and distinctly from the intention to commit a crime. The mere fact that a crime was committed or was intended is an insufficient basis for finding that the entry or remaining was without privilege or authority."
People v. Hutchinson, 124 Misc.2d 487, 490, 477 N.Y.S.2d 965,967 (Sup.Ct. 1984), aff'd, 121 A.D.2d 849, 503 N.Y.S.2d 702
(1986), appeal dismissed, 68 N.Y.2d 770, 506 N.Y.S.2d 1054, 498 N.E.2d 156 (1986) (emphasis added); see People v. Gaines,74 N.Y.2d 358, 546 N.E.2d 913, 916, 547 N.Y.S.2d 620 (1989);People v. Ludlowe, 117 Misc.2d 567, 458 N.Y.S.2d 833, 835
(Sup.Ct. 1983).
On the other hand, the State relies on a series of cases from the Court of Criminal Appeals that allow juries to infer the revocation of license or privilege simply from the evidence regarding the crime committed *Page 920 
within the building. See Stewart v. State, 601 So.2d 491
(Ala.Crim.App. 1992) (citing Gentry I), aff'd on return to remand,659 So.2d 120 (Ala.Crim.App. 1992), aff'd in part, rev'd inpart, Ex parte Stewart 659 So.2d 122 (Ala. 1993); Gentry I,supra; Moss v. State, 536 So.2d 129 (Ala.Crim.App. 1988);Johnson v. State, 473 So.2d 607 (Ala.Crim.App. 1985).
In Johnson v. State, 473 So.2d 607 (Ala.Crim.App. 1985), Johnson was sentenced to life imprisonment for a capital murder committed during a burglary and a robbery. Johnson entered the victim's home under the pretext of wanting to use her telephone and, once inside, beat her to death and removed money from her purse. Id. In upholding Johnson's conviction, the Court of Criminal Appeals held that a termination of his license to remain on the victim's premises could be inferred from the circumstantial evidence of a struggle and a beating. 473 So.2d at 610. The court stated: "Clearly, the defendant 'remained unlawfully' in the dwelling from the point at which he decided to commit a felony." 473 So.2d at 609.
In so holding, the Johnson court relied upon Davis v. State,44 Ala. App. 284, 288, 207 So.2d 649, 653 (1967), cert. denied,281 Ala. 718, 207 So.2d 656 (1968), for the proposition that non-consent, as an element of burglary, can be proven by circumstantial evidence. In both Johnson and Davis, the defendant and the victim did not know one another and the jury could have found that the defendant's initial entry was unlawful. Johnson, supra, at 608; Davis, 44 Ala. App. at 288,207 So.2d at 651. In addition, the murder in Johnson
occurred during a robbery as well as during a burglary; this fact also operates to elevate a murder to a capital offense. §13A-5-40(a)(2), Ala. Code 1975.
The Court of Criminal Appeals followed this interpretation of the burglary statute in Moss v. State, 536 So.2d 129, 133-34
(Ala.Crim.App. 1988). Moss was convicted of murder committed during a burglary, and, unlike the situation in Johnson, there was very little circumstantial evidence indicating that Moss's license to remain had been revoked or that he had made an unlawful entry.[2] Like Gentry, Moss used a key to enter the victim's apartment. However, the court ruled that evidence of the struggle and the murder was sufficient to support an inference that Moss had remained unlawfully. Moss, supra, at 133 (quoting at length from Johnson, 473 So.2d at 609-11).
In Stewart v. State, 601 So.2d 491 (Ala.Crim.App. 1992),aff'd on return to remand, 659 So.2d 120 (Ala.Crim.App. 1992), the Court of Criminal Appeals affirmed Stewart's conviction and death sentence for murder committed during the course of burglary and kidnapping. Stewart drove to his former wife's mobile home, and, after entering, he beat her, dragged her outside, and, in attempting to force her into his truck, shot and killed her. 601 So.2d at 496-97. Stewart did not knock on his former wife's door; instead, he "jarred the door open and went on in." 601 So.2d at 498. According to the Court of Criminal Appeals, this was sufficient evidence that Stewart entered unlawfully for purposes of the burglary conviction. Id.
In dicta, the court indicated that Stewart could have been found guilty of burglary even if he had entered the mobile home lawfully, based on the "remains unlawfully" construction given the burglary statute in Johnson, supra, and Moss, supra. Id.
However, our affirmance of the judgment of the Court of Criminal Appeals, as to Stewart's conviction, is not to be taken as approval of that dicta.
In Gentry I, 595 So.2d 548 (Ala.Crim.App. 1991), the Court of Criminal Appeals, after noting that all parties agreed that the judgment of the circuit court must be reversed because of the court's error in allowing the jury to separate, addressed the burglary statute's operation with regard to the "remains unlawfully" language. The court reiterated its holdings fromJohnson and Moss, supra, and quoted at length the holding from *Page 921 
a Florida appellate court decision interpreting Florida's burglary statute. Gentry I, at 551-53 (quoting Ray v. State,522 So.2d 963, 965-67 (Fla.Dist.Ct.App. 1988), review denied,531 So.2d 168 (Fla. 1988)).
Although this Court denied Gentry's petition for the writ of certiorari after the first appeal to the Court of Criminal Appeals, Gentry I, 595 So.2d 548 (Ala.Crim.App. 1991), the denial was not a ruling on the merits. Kilpatrick v. State,291 Ala. 628, 285 So.2d 525 (1973). The denial of certiorari is particularly nondispositive of the merits of this issue because Gentry was seeking review of an adverse holding even though the judgment was in his favor, reversing his conviction.
Similarly, the Court of Criminal Appeals has cited this construction of "remains unlawfully" to uphold burglary convictions as such. See Glass v. State, 671 So.2d 114
(Ala.Crim.App. 1995); Weaver v. State, 564 So.2d 1007, 1010
(Ala.Crim.App. 1989); Minshew v. State, 542 So.2d 307
(Ala.Crim.App. 1988). In all of these cases, there was evidence that the initial entry was unlawful, and the court cited the Johnson
line of cases only for an alternative holding that the defendant had remained unlawfully on the victim's premises.
We disagree with this interpretation. Now that the issue is squarely presented to us, we hold that to establish an "unlawful remaining" when the defendant has a license or privilege to be on the premises, the State must present evidence other than evidence that the defendant committed a crime in a dwelling or a building owned or controlled by the victim. To hold otherwise would vitiate the statutory elements of first- and second-degree burglary. Moreover, interpreting § 13A-5-7, Ala. Code 1975, as the State suggests would violate the constitutional limitations designed to reserve capital punishment for only the most egregious crimes, by expanding the scope of the death penalty to apply to intentional murders distinguishable from other intentional murders only because they occur indoors. Zant, supra.
To the extent that the above-cited opinions of the Court of Criminal Appeals are inconsistent with our holding in this case, those opinions are hereby overruled. See Stewart v.State, 601 So.2d 491 (Ala.Crim.App. 1992), aff'd on return toremand, 659 So.2d 120 (Ala.Crim.App. 1992), aff'd in part,rev'd in part, Ex parte Stewart, 659 So.2d 122 (Ala. 1993);Gentry I, 595 So.2d 548 (Ala.Crim.App. 1991); Moss v. State,536 So.2d 129 (Ala.Crim.App. 1988); Johnson v. State,473 So.2d 607 (Ala.Crim.App. 1985); Glass v. State, 671 So.2d 114
(Ala.Crim.App. 1995); Weaver v. State, 564 So.2d 1007, 1010
(Ala.Crim.App. 1989); Minshew v. State, 542 So.2d 307
(Ala.Crim.App. 1988).
There is no evidence of a burglary in this case. Gentry simply used the key that Hill had given him to enter her apartment. When she returned home, he killed her. There was no separate crime of burglary simply because one could infer that she realized he was attacking her and therefore may or must have "revoked his privilege to remain." It was, therefore, error to instruct the jury that for purposes of determining whether the defendant had committed a burglary, "the fact that the victim had terminated the defendant's license or privilege to be present in the victim's apartment can be inferred fromthe circumstances that a struggle took place." This jury instruction had the effect of relieving the State of its burden of presenting a prima facie case of burglary. The burden is on the State to offer sufficient evidence to prove each element of a charged offense. Warren v. State, 292 Ala. 71, 288 So.2d 826
(1973).
For the foregoing reasons, the judgment of the Court of Criminal Appeals is reversed and this cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
SHORES,* HOUSTON, KENNEDY, and COOK,* JJ., concur.
HOOPER, C.J., and MADDOX and BUTTS, JJ., dissent.
[1] The definition of burglary in the second degree in §13A-7-6(a) is virtually identical except that it uses the word "building" where § 13A-7-5(a) uses the word "dwelling" and uses the phrase "theft or a felony" where § 13A-7-5(a) uses the word "crime." Thus, the question of "remaining unlawfully" may pertain to a "building" as well as to a "dwelling." A capital murder prosecution can be based on a murder that occurs during a second-degree burglary. § 13A-5-40(a)(4). When discussing the application of "remains unlawfully" in general, we will speak broadly of remaining in a "building" with intent to commit a "crime," so as to encompass both first- and second-degree burglary.
[2] Both Moss and Johnson were sentenced to life imprisonment without possibility of parole, so neither of their appeals came to this Court for plain-error review, see Rule 45A, Ala. R.App. P., as they would have if the defendants had been sentenced to death. This Court denied certiorari petitions in both cases, but the denial of certiorari review is not a ruling on the merits. Kilpatrick v. State, 291 Ala. 628, 285 So.2d 525
(1973).
* Although Justice Shores and Justice Cook were not present for oral argument, they have listened to the tape of oral argument. *Page 922