I will begin by setting out the facts of this case. The Court of Criminal Appeals held that the state's evidence showed the following:
 "The victim, Kimberly Diane Hill, and the appellant, who were involved in an affair, worked together at the Bank Operations Center of AmSouth Bank of Birmingham; the appellant was the shift manager and the victim's supervisor. On January 12, 1989, the day preceding the murder, they were to work the evening shift from 4:00 p.m. to 1:00 a.m. The appellant was married and had two children; Hill was a 24-year-old divorcee with no children. She had given the appellant keys to her apartment, and he was frequent visitor there. Hill became pregnant as a result of the relationship, and the appellant promised to divorce his wife and to marry her. On the day of the murder, the appellant complained of being ill, left work early, and went to Hill's apartment, where he removed his work clothes and put on a pair of 'camouflage fatigues.' He waited in the dark for Hill to come home. When she entered the apartment, he grabbed her, beat her, and stabbed her repeatedly with a knife he had obtained from the kitchen. Then, when he observed that she was still moving, he bound her hands and feet with telephone cords and stuffed a towel down her throat. Before the appellant left the apartment, he opened the patio door, dumped the contents of Hill's purse on the floor, removed two rings from her fingers, and took other items from her jewelry box in an effort to make the crime appear as a 'robbery attempt.' After leaving the apartment, the appellant discarded the 'camouflage fatigues' and jewelry in various parts of the city by throwing them from his automobile, and he returned to his home. The appellant went to work later in the day on January 13, 1989, at the regular time and, when Hill did not arrive at work, he expressed concern regarding her whereabouts, asked several people to call and check on her, and eventually asked Hill's mother to go to the victim's apartment to check on her. Hill's mother went to her apartment, where she discovered her daughter's body.
 "The autopsy revealed that the victim sustained 10 stab wounds, two incised wounds, and nine lacerations. The blade of the knife, which was left imbedded in her body, was 6-1/2" long. Her face was bruised, and her nose was broken. She died from multiple stab wounds and multiple blunt traumas. The autopsy also revealed that she was seven weeks pregnant.
 "Much of the state's evidence consisted of facts first disclosed by the appellant's confession and later corroborated [by a co-worker and friend of the appellant]. The appellant gave a statement to police investigators on the day after the murder, admitting that he had killed the victim. This statement was tape-recorded and introduced into evidence by the state."
Gentry v. State, 689 So.2d 894, 898 (Ala.Crim.App. 1994).
I was almost persuaded to concur with the opinion of the majority in its conclusion that "[t]here is no evidence of a burglary in this case," 689 So.2d at 921, and, therefore, no capital offense, because the defendant had a key to the victim's apartment. However, after reviewing the common law principles relating to burglary, and the provisions of Alabama's statute that make it a crime of burglary to remain unlawfully in a dwelling with intent to commit a crime therein,[3] I am now convinced that the Court of Criminal Appeals correctly held that the burglary *Page 923 
charge could be supported by proof of a nonconsensual remaining; thereby justifying the sentence of death for murder committed during the course of a burglary.[4] I am also convinced, based on the particular facts and circumstances proved in this case, that there was a "constructive breaking."
The facts show that the defendant committed a gruesome premeditated killing, and the gravamen of the offense of capital murder is an "intentional killing." Ex parte Kyzer,399 So.2d 330 (Ala. 1981); Beck v. State, 396 So.2d 645 (Ala. 1980). In Kyzer, this Court, in discussing what constituted the "offense" and what constituted the "aggravation," said that "there is no disagreement in court decisions that the gravamen of the capital offense is the 'intentional killing.' " 399 So.2d at 335. In Beck, this Court held that each of the capital crimes specified by the legislature "requires an intentional killing with aggravation, and not some crime other than homicide under aggravated circumstances." 396 So.2d at 662. (Emphasis omitted.) Thus the State must prove that there was an intentional killing with aggravation, which in this case is the burglary.
Common law burglary was an offense against habitation and was committed by the breaking and entering of the dwelling of another in the nighttime with intent to commit a felony therein. There were six elements: (1) the breach, (2) the entry, (3) the dwelling, (4) "of another," (5) the nighttime, and (6) burglarious intent. R. Perkins, Perkins on CriminalLaw, p. 192, 195 (2d ed. 1969). The primary objective of the law of common law burglary and of burglary statutes was, and it still is, to conserve human life, not property. Reeves v.State, 245 Ala. 237, 240, 16 So.2d 699, 702 (1943).
The contest in this case between the State and the defendant is over whether the State proved a "breaking," because the defendant had a key to the apartment where the crime was committed. I believe that there was; hence, I dissent.
The question whether particular conduct constitutes a breaking has been presented in many cases for many, many years, involving many differing fact situations. The question has plagued judges, intrigued law professors, caused legal scholars to disagree, and frustrated law students trying to answer difficult law school examination questions on the subject.
Moreover, the question whether there is a breaking if the defendant has consent to enter the premises of another has been especially troublesome. This Court was called upon to address that question in Brown v. State, 55 Ala. 123 (1876), using common law principles without the benefit of a statute that addresses this particular situation. The facts in Brown, as set out in the report of the case, were:
 "The defendant in this case was indicted for breaking and entering the drug-store of Dr. John Paul Jones in the town of Camden, with the intent to steal, and stealing money from the drawer. The evidence adduced on the trial, as to which there was no controversy, showed that he entered the store through the open door, and secreted himself behind the counter; that the clerk, having occasion to leave the *Page 924 
store, shut the windows, and closed and locked the door, leaving the defendant so secreted; and that the defendant, during the absence of the clerk, opened the money drawer, took from it between nine and ten dollars, and escaped through one of the back windows, which he opened. On this evidence, the defendant asked the court to charge the jury as follows: 'If the jury believe, from the evidence, that the front door of the store was open, and, being open, the defendant entered, and secreted himself under the counter; and that the clerk of the store went out, and shut and locked the door, locking up the defendant in the store; and that the defendant, while thus locked up, took money out of the drawer, and went out of the house by opening a window, — then the defendant would not be guilty of burglary as charged in the indictment.' The court gave this charge, but added to it the following explanation, or qualification: 'If the jury find, from the evidence, that he so entered the house with the felonious intent to secrete himself therein for the purpose of stealing therefrom, then it would, in legal contemplation, constitute breaking the house;' to which explanation, or qualification, the defendant excepted."
55 Ala. at 123-24.
This Court said:
 "The Revised Code (§ 3695) declares, that 'any person who, either in the night or day time, with intent to steal, or to commit a felony, breaks into and enters a dwelling house, or any building within the curtilage of a dwelling house, though not forming a part thereof; or into any shop, store, warehouse, or other building, in which any goods, merchandise or other valuable thing is kept for use, sale, or deposit, is guilty of burglary,' c. It will be observed that this offense naturally divides itself into three constituent elements; the character of the house, the breaking into it, and the intent with which he entered the house. On the first and third of these constituents, there seems to have been no dispute in this case. The contest was over the second. The undisputed evidence is, that the front door of the store, in which the offense is alleged to have been committed, was open; that the defendant entered the house through said open door, secreted himself in the store, and, when the store was closed and locked, the defendant was locked in. Afterwards, the defendant, being in the store, committed the larceny spoken of, and, opening or breaking a window, escaped with the money stolen. The question for our decision is, does this amount to a breaking into the store, within the statute?
 "The cases of Donohoo v. The State, 36 Ala. 281, and Walker v. The State, 52 Ala. 376, are relied on in support of the charge in this case. In the case of Walker, as in this case, there was a breaking out; but the prisoner was not adjudged guilty on that account. In each of those cases, the entry was by way of the chimney, which is uniformly held to be a sufficient breaking and entering to constitute that element of the crime of burglary. On that principle were the defendants adjudged guilty in the two cases cited. There must be an actual breaking, or a constructive breaking, by fraud, threats, or conspiracy. 3 Greenl. Ev. § 76. In England, they have a statute, which makes the escaping from a house, by breaking, etc., after committing a felony in the house, burglary in the offender. We have no such statute here. See Com. v. Strupney, 105 Mass. 588 [7 Am. Rep. 556]; Roscoe's Cr. Ev. 347."
Brown, 55 Ala. at 124-25. (Emphasis added.)
I do not know which English statute this Court was referring to in Brown, but R. Perkins, in his treatise on criminal law, states that "[a]n English statute in 1713 provided that one who entered without breaking should be guilty of burglary if he broke out of the place, provided all other elements of the crime were present." R. Perkins, Perkins on Criminal Law, p. 197 (2d ed. 1969).[5] *Page 925 
It is probable that this Court was referring to the English statute cited as 12 Anne c. 7, which reads: " 'that if any person shall enter into the mansion or dwelling house of another by day or by night, without breaking the same, with an intent to commit felony; or, being in such house, shall commit any felony; and shall in the night-time break the said house to get out of the same,' — it shall be burglary."[6] The effect of that statute, according to legal scholars, "made it burglary for a person to enter without breaking, with intent to commit a felony, or, being in the house, to commit any felony, and then in the nighttime break out of the house." 1 Brill, Cyclopediaof Criminal Law § 472 (1922).
It is my opinion that when this Court, in Brown, stated that "[i]n England, they have a statute, which makes the escaping from a house, by breaking, etc., after committing a felony in the house, burglary in the offender," and that "[w]e have no such statute here," the Court clearly implied that the conviction in Brown would have been upheld if Alabama had had such a statute on the books. Alabama now has such a statute, and I believe that Brown clearly supports the proposition that the conduct by the defendant in this case constituted "burglary in the offender." This conclusion is based upon my review of the principles of common law burglary and Alabama case law relating to common law burglary, as modified by statute. Mossv. State, 536 So.2d 129 (Ala.Cr.App. 1988), and Minshew v.State, 542 So.2d 307 (Ala.Cr.App. 1988).
In conclusion, it appears to me that there was overwhelming evidence that the defendant, even though he had a key to the victim's apartment, formed an intent, before he entered, to kill the victim and carried out that intent after he gained entry and lay in wait. If there was ever a set of facts proving a premeditated and gruesome killing deserving of the death penalty, this case presents it. I realize that the State was required to prove the aggravated circumstance, i.e., that the intentional killing was committed during a burglary, but it appears to me that the defendant's conduct in this case, whether described as "constructive breaking," "breaking out" or "unlawfully remaining," constitutes burglary in the first degree as defined by our current Criminal Code[7] and thus makes this particular murder a capital offense;[8] consequently, I would affirm the judgment of the Court of Criminal Appeals.
HOOPER, C.J., concurs.
[3] § 13A-7-5, Ala. Code 1975:
"Burglary in the first degree.
"(a) A person commits the crime of burglary in the first degree if he knowingly and unlawfully enters or remains unlawfully in a dwelling with intent to commit a crime therein, and, if, in effecting entry or while in [a] dwelling or in immediate flight therefrom, he or another participant in the crime:
"(1) Is armed with explosives or a deadly weapon; or
 "(2) Causes physical injury to any person who is not a participant in the crime; or
 "(3) Uses or threatens the immediate use of a dangerous instrument.
"(b) Burglary in the first degree is a Class A felony." Source: Acts 1977, No. 607, p. 812, § 2610; Acts 1979, No. 79-471, p. 862, § 1.
[4] The Court of Criminal Appeals, noting that the defendant had raised in his first trial and in his first appeal the same issue now presented, said the following:
 "[W]e ruled against him, Gentry v. State, 595 So.2d 548
(Ala.Cr.App. 1991), cert. denied, 595 So.2d 548
(Ala.Cr.App. 1992), relying on Moss v. State, 536 So.2d 129
(Ala.Cr.App. 1988), and Minshew v. State, 542 So.2d 307
(Ala.Cr.App. 1988). We held in Gentry that even if the entry was consensual, a burglary charge could be supported by a nonconsensual remaining and the fact that the victim terminated the appellant's license or privilege to remain on the premises can be inferred where, as here, a struggle took place and the victim was beaten. We further held that the trial court properly submitted to the jury the issue of whether the appellant entered or remained unlawfully in the victim's apartment. The evidence presented at both trials is substantially the same. No new evidence was presented in the second trial of the case that would cause us to change our earlier opinion on this issue. The authorities cited by the appellant on this second appeal in support of his contention are no more persuasive than those cited on his first appeal. We reaffirm and adopt our prior holding on this issue. The trial court's denial of the motion for a judgment of acquittal on this ground was proper. The trial court properly submitted the issue to the jury."
689 So.2d at 905.
[5] Perkins, in a footnote to this statement that I quote from his treatise, cited the English statute in 1713 as 12 Anne c. 7, and included this comment: "There have been some suggestions that this statute merely removed a doubt and actually codified the common law. See 2 Bishop, New Criminal Law § 99 (8th ed. 1892)." But he also noted, "Hale says it was not burglary. 1 Hale P.C. 554." Perkins commented that "[i]t is believed that the notion of substituting a 'breaking out' for a 'breaking in,' so far as common-law burglary is concerned, grew out of misinterpretations of statements dealing with breaking into an inner room." There are cases that apply a "constructive breaking" analysis. In State v. Howard, 64 S.C. 344,42 S.E. 173 (1902), a servant who had the right to lodge in his master's dwelling, but who being outside came in either by opening the door or by raising the sash, not with intent to lodge therein but with intent to steal, and actually stole and carried away his master's goods, committed burglary. In Davisv. Commonwealth, 132 Va. 521, 110 S.E. 356 (1922), the court held that a breaking, as an element of the crime of burglary, could be either actual or constructive.
[6] 2 Bishop, New Commentaries on The Criminal Law — The SpecificOffenses § 99 (1892), quoting 12 Anne, stat. 1, c. 7, § 3 (1713), and 1 Hawk. P.C. Curw. ed. p. 132, § 15; 2 East P.C. 489.
[7] § 13A-7-5, Ala. Code 1975.
[8] § 13A-5-40(a)(4), Ala. Code 1975