MADDOX, Justice.
This petition raises the question whether the defendant Joseph Ward Gentry, whose conviction for capital murder has been reversed, can be retried for capital murder. On remand of Gentry’s case following the reversal, the circuit court determined, based upon arguments presented before it, that Gentry could be retried for capital murder. Gentry petitioned the Court of Criminal Appeals for a writ of mandamus barring the retrial; that court, on January 7, 1998, held that the decision by this Court reversing the conviction for capital murder on the ground that the evidence was insufficient would bar a retrial for capital murder. See Ex parte Gentry, 727 So.2d 138 (Ala.Cr.App.1998) (“Gentry IV”).
We have granted the State’s petition for certiorari review of that decision of the Court of Criminal Appeals. Although we believe this Court’s decision in Ex parte Gentry, 689 So.2d 916 (Ala.1996) (“Gentry III”), incorrectly stated the law of this State relating to the sufficiency of the evidence to prove burglary, we nevertheless feel constrained to affirm the January 7, 1998, judgment of the Court of Criminal Appeals, which applied the rule “that a reversal based on insufficient evidence bars a retrial for the same offense.” Gentry IV, 727 So.2d at 141. We hasten to point out, however, that we affirm only because the judgment of this Court in Gentry III involved the same case the Court of Criminal Appeals had before it on the mandamus petition in Gentry TV.
In Gentry III, this Court reversed Gentry’s capital-murder conviction on the ground that the trial court and the Court of Criminal Appeals had applied an incorrect standard for determining when a person “remains unlawfully,” as that term is used in § 13A-7-5, Ala.Code 1975. Gentry now argues that the State is barred from retrying him on the capital charge because, he argues, constitutional protections against double jeopardy protect him from facing trial again on the same capital-murder charge. For the reasons we explain below, we are compelled to agree; the State may not retry Gentry on the capital-murder charge.

Facts and Procedural History

On January 13, 1989, Kimberly Diane Hill was found dead in her apartment; she had died from multiple blunt-foree trauma wounds and stab wounds. Based on Hill’s death, Joseph Ward Gentry was subsequently indicted and convicted of capital murder, and the jury recommended the imposition of the death penalty, which the trial judge imposed. The Court of Criminal Appeals reversed the conviction and remanded the case, holding that the trial court had improperly allowed the jury to separate, despite Gentry’s objection, in violation of § 12-16-9(a), Ala. Code 1975. Gentry v. State, 595 So.2d 548 (Ala.Crim.App.1991) (“Gentry I”), cert. denied, 595 So.2d 548 (Ala.1992).
At a second trial, Gentry was again convicted on the capital-murder charge, but the jury, by a vote of 7 to 5, recommended that Gentry be sentenced to life imprisonment without parole. The trial judge refused to follow that recommendation and sentenced Gentry to death.
The Court of Criminal Appeals affirmed Gentry’s second conviction and the sentence of death. Gentry v. State, 689 So.2d 894 (Ala.Crim.App.1994) (“Gentry II”). It its opinion in Gentry II, the Court of Criminal Appeals set out the facts as shown by the State’s evidence:
“The victim, Kimberly Diane Hill, and [Gentry], who were involved in an affair, *143 worked together at the Bank Operations Center of AmSouth Bank of Birmingham; [Gentry] was the shift manager and the victim’s supervisor. On January 12, 1989, the day preceding the murder, they were to work the evening shift from 4:00 pm to 1:00 am. [Gentry] was married and had two children; Hill was a 24-year-old divorcee with no children. She had given [Gentry] keys to her apartment, and he was a frequent visitor there. Hill became pregnant as a result of the relationship, and [Gentry] promised to divorce his wife and to marry [Hill]. On the day of the murder, [Gentry] complained of being ill, left work early, and went to Hill’s apartment, where he removed his work clothes and put on a pair of ‘camouflage fatigues.’ He waited in the dark for Hill to come home. When she entered the apartment, he grabbed her, beat her, and stabbed her repeatedly with a knife he had obtained from the kitchen. Then, when he observed that she was still moving, he bound her hands and feet with telephone cords and stuffed a towel down her throat. Before [Gentry] left the apartment, he opened the patio door, dumped the contents of Hill’s purse on the floor, removed two rings from her fingers, and took other items from her jewelry box in an effort to make the crime [look like] as a ‘robbery attempt.’ After leaving the apartment, [Gentry] discarded the ‘camouflage fatigues’ and jewelry in various parts of the city by throwing them from his automobile, and he returned to his home. [Gentry] went to work later in the day on January 13,1989, at the regular time and, when Hill did not arrive at work, he expressed concern regarding her whereabouts, asked several people to call and cheek on her, and eventually asked Hill’s mother to go to [Hill’s] apartment to check on her. Hill’s mother went to [the] apartment, where she discovered her daughter’s body.
“The autopsy revealed that the victim sustained 10 stab wounds, two incised wounds, and nine lacerations. The blade of the knife, which was left imbedded in her body, was 6-1/2 [inches] long. Her face was bruised, and her nose was broken. She died from multiple stab wounds and multiple blunt traumas. The autopsy also revealed that she was seven weeks pregnant.
“Much of the state’s evidence consisted of facts first disclosed by [Gentry’s] confession and later corroborated [by a coworker and friend of Gentry]. [Gentry] gave a statement to police investigators on the day after the murder, admitting that he had killed the victim. This statement was tape-recorded and introduced into evidence by the state.”
Gentry II, 689 So.2d at 898.
This Court granted certiorari review, and, in a split decision, reversed and remanded, holding that the Court of Criminal Appeals, in interpreting the burglary statute, had incorrectly construed the term “remains unlawfully.” Gentry III, 689 So.2d 916.
Following this Court’s decision in Gentry III, Gentry filed a motion in the trial court to bar a retrial, asserting that a retrial on the capital charge would violate the prohibition in the Federal and State constitutions against double jeopardy. The trial court denied that motion, and Gentry petitioned the Court of Criminal Appeals for a writ of mandamus that would bar the retrial. That court, on January 7, 1998, granted the petition, holding that this Court, in Gentry III, had reversed because of insufficiency of the evidence. Gentry IV, 727 So.2d 141. The Court of Criminal Appeals noted that “[i]t has long been established that a reversal based on insufficient evidence bars a retrial for the same offense.” 727 So.2d at 141. Therefore, the Court of Criminal Appeals reasoned, this Court’s decision in Gentry III erected a double-jeopardy bar to Gentry’s retrial on the capital-murder charge.
We granted the State’s petition for certio-rari review.

Discussion

The central issue on this certiorari review is whether Gentry may be retried on the capital-murder charge or whether he is protected from such a retrial by operation of the Double Jeopardy Clauses of the Alabama and Federal Constitutions.
*144 The starting point for any analysis of the applicability of the double-jeopardy bar must be Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Burks had been tried for the crime of robbing a federally insured bank, and he had adopted the defense of insanity, presenting several witnesses supporting his defense. Id. The Government offered the testimony of several witnesses to rebut the defense of insanity. Id. at 3, 98 S.Ct. 2141. The trial court denied a motion for a judgment of acquittal, and the jury convicted Burks. Id.
The United State Court of Appeals for the Sixth Circuit, however, held that the government had failed to present sufficient evidence to rebut Burks’s defense of insanity, noting that the burden was on the government to prove the defendant’s sanity beyond a reasonable doubt, once the defendant had made a prima facie showing of insanity. Id. at 3-4, 98 S.Ct. 2141. The Court of Appeals remanded the case to the trial court, instructing that court to allow the government to present additional evidence rebutting Burks’s insanity defense. Id. at 3, 98 S.Ct. 2141. The Court of Appeals instructed the trial court to grant a new trial if the court found the government’s additional evidence sufficient, and if the trial court did not find the additional evidence sufficient, the court was instructed to enter a directed verdict of acquittal. Id.
On certiorari review, the United States Supreme Court addressed a relatively narrow question, considering “whether an accused may be subjected to a second trial when conviction in a prior trial was reversed by an appellate court solely for lack of sufficient evidence to sustain the jury’s verdict.” Burks, 437 U.S. at 2, 98 S.Ct. 2141. The Supreme Court held that the Double Jeopardy Clause of the Federal Constitution would bar a new trial on the same offense. Id. at 18, 98 S.Ct. 2141.
In holding as it did in Burks, however, the Supreme Court was careful to distinguish the case in which a conviction is reversed because of insufficient evidence from the case in which a conviction is reversed for some other kind of trial error:
“[I]t is important to consider carefully the respective roles of these two types of reversals in double jeopardy analysis.
“Various rationales have been advanced to support the policy of allowing retrial to correct trial error, but in our view the most reasonable justification is that advanced by [United States v. Tateo, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964)]:
“‘It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.’
“In short, reversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a' defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished.”
Burks, 437 U.S. at 15, 98 S.Ct. 2141 (citations and footnotes omitted). In light of this explanation in Burks, it becomes clear that the key to resolving this case is determining whether this Court’s decision in Gentry III was based on a conclusion that at trial the State had presented insufficient evidence to support a conviction or was based on some other kind of reversible error.
Gentry argues that he may not be retried on the capital-murder charge because, he argues, this Court in Gentry III held that the State had presented insufficient evidence to prove burglary. Specifically, he relies on the opening sentence of the next to last paragraph of the majority opinion: “There is no evidence of a burglary in this case.” Gentry III, 689 So.2d at 921. The State, of course, argues that this Court’s decision in Gentry *145 III was not based on insufficiency of the evidence.
In its opinion in Gentry III, this Court addressed the following question:
“Our review concerns the scope of a defendant’s ‘remaining unlawfully' in a dwelling (or other building) as an element of burglary. Specifically, if a person who has permission to be in a dwelling murders the occupant, has that person also committed burglary by virtue of ‘remaining unlawfully’ in the dwelling, on the basis that the jury could infer from the fact that a struggle preceded the murder that the occupant must have revoked the person’s permission to be there?”
689 So.2d at 917.
After reviewing the record, a majority of this Court held in Gentry III:
“There is no evidence of a burglary in this case. Gentry simply used the key that Hill had given him to enter her apartment. When she returned home, he killed her. There was no separate crime of burglary simply because one could infer that she realized he was attacking her and therefore may or must have ‘revoked his privilege to remain.’ It was, therefore, error to instruct the jury that for purposes of determining whether the defendant had committed a burglary, ‘the fact that the victim had terminated the defendant’s license or privilege to be present in the victim’s apartment can be inferred from the circumstances that a struggle took place.’ This jury instruction had the effect of relieving the State of its burden of presenting a prima facie case of burglary. The burden is on the state to prove each element of a charged offense.”
Gentry III, 689 So.2d at 921.
Although we now believe that the decision in Gentry III was erroneous, we must conclude, as did the Court of Criminal Appeals, that this Court did, in fact, determine that the evidence presented at Gentry’s second trial was insufficient to prove burglary. We hasten to add, however, that the decision of a majority of this Court relating to the sufficiency of the evidence to prove burglary under Alabama law, as that law was interpreted in Gentry III should not be followed. It is clear that, before this Court’s decision in Gentry III, the law permitted a factfinder to infer the revocation of a license by evidence of a struggle. See the Court of Criminal Appeals’ opinion in Gentry I, 595 So.2d 548, and eases cited therein. Thus, before this Court released its decision in Gentry III, the caselaw of Alabama had allowed a jury to infer “the fact that the victim terminated the defendant’s license or privilege to remain on the premises ... where a struggle took place and the victim was beaten.” Gentry I, 595 So.2d at 551.
We have carefully reviewed Gentry III to determine whether this Court intended to allow a retrial of the capital-murder charge. In our review, we have specifically looked at this statement by the Gentry III majority:
“[T]o establish an- ‘unlawful remaining’ when the defendant has a license or privilege to be on the premises, the State must present evidence other than evidence that the defendant committed a crime in a dwelling or a budding owned or controlled by the victim.”
Gentry III, 689 So.2d at 921. Does this statement by the majority in Gentry III suggest that the majority did not intend to foreclose a retrial of Gentry on the capital-murder charge? Stated differently, did the majority intend to permit tbe State to attempt to prove a burglary by introducing evidence additional to that introduced at Gentry’s second trial? Compare United States v. Wacker, 72 F.3d 1453 (10th Cir.1995), in which the United States Court of Appeals for the Tenth Circuit considered a case similar to this one.
In Wacker, seven defendants were charged with multiple offenses arising from their growing, harvesting, and transporting marijuana. Id. at 1459. One of the offenses charged was that the defendants “used” a firearm in conjunction with drug trafficking, in violation of 18 U.S.C. § 924(c). The indictment charged that the defendants .had “used” the firearm, not that it had been “carried.” Id. at 1464. At the time of trial, Tenth Circuit caselaw held that a firearm could be found to have been “used” for purposes of the statute if:
*146 “(1) the defendant had ‘ready access’ to the firearm; and (2) the firearm was an ‘integral part’ of the criminal undertaking and increased the likelihood that the undertaking would succeed.”
Wacker, 72 F.3d at 1463, quoting United States v. McKinnell, 888 F.2d 669, 675 (10th Cir.1989). Between the time of the trial and the release of the Tenth Circuit’s Wacker opinion, however, the United States Supreme Court released its decision in Bailey v. United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), wherein it established the standard for determining the evidence necessary to support a conviction under § 924(c) for “use” of a firearm. The Supreme Court “héld that ‘[t]o sustain a conviction under the “use” prong of § 924(c)(1), the Government must show that the defendant actively employed the firearm during and in relation to the predicate crime.’” Wacker, 72 F.3d at 1463, quoting Bailey, 516 U.S. at 138, 116 S.Ct. 501. When, in Wacker, the Tenth Circuit considered the effect of the Bailey decision, it held that the “use” charge had to be remanded for a new trial applying the standard the Supreme Court had established in the intervening time. Further, in considering whether the constitutional protection against double jeopardy would preclude such a retrial, that court wrote:
“We note that our remand is not inconsistent with the Double Jeopardy Clause. While reversal of a conviction on the grounds of insufficient evidence precludes retrial of the defendant, Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), we do not find that rule applicable here. The reasoning in Burks was twofold. First, by reversing a conviction for insufficient evidence, the reviewing court is actually making a determination that the trial court erred in failing to direct a verdict of acquittal on the evidence; accordingly, the defendant should be treated as though he or she were acquitted. Id. at 10, 98 S.Ct. at 2146-47. Second, the prosecution may not, consistent with the Double Jeopardy Clause, be afforded a second opportunity to supply evidence which it ‘failed to muster in the first proceeding.’ Id. at 11, 98 S.Ct at 2147. Neither of these concerns is present in this case.... [T]he government here cannot be held to be responsible for failing to muster’ evidence sufficient to satisfy a standard which did not exist at the time of trial. See United States v. Weems, 49 F.3d 528, 530-31 (9th Cir.1995) (retrial not barred by double jeopardy where prosecutor failed to prove element of crime that, at time of trial, did not need to be proved) (citing Linam v. Griffin, 685 F.2d 369, 373-74 (10th Cir.1982), cert. denied, 459 U.S. 1211, 103 S.Ct. 1207, 75 L.Ed.2d 447 (1983)).
“We find the present situation analogous to that in Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). There, the Supreme Court found retrial appropriate where a certain item of evidence was erroneously admitted at trial, and without which thé prosecution’s proof was insufficient to sustain the conviction. The Court reasoned that had the evidence been properly excluded at trial, the prosecution would have attempted to offer additional evidence to satisfy its burden. Id. at 42, 109 S.Ct. at 291-92. Thus, the reversal was one for ‘trial error’ rather than for pure insufficiency of evidence, and retrial did not violate [the prohibition against] double jeopardy. Id. at 33, 109 S.Ct. at 286-87. Here, our reversal is analogous to one based on trial error: the legal standard under which the jury was instructed and under which the government presented its proof was incorrect. We conclude that ‘whenever a conviction is reversed solely for failure to produce evidence that was not theretofore generally understood to be essential to prove the crime, ... [the prohibition against] double jeopardy does not bar reprosecution.’ Linam, 685 F.2d at 379 (Anderson, Dist. J., concurring).’”
Wacker, 72 F.3d at 1465 (emphasis added).
We have carefully considered the Wacker case to determine whether the reversal in Gentry III was based solely on the failure of the State to produce evidence that was not theretofore generally understood to be essential to prove the crime of burglary, or whether it was based upon a determination by the majority that the evidence was insufficient to support a finding of burglary. If it was based on the former, then the prohibition *147 against double jeopardy would not bar re-prosecution on the capital-murder charge, but if it was based on the latter, then it would.
We find the reasoning of the Tenth Circuit in Wacker to be sound, but we cannot hold that the Wacker reasoning applies to this case. We have carefully considered this question, but we are compelled to conclude, after examining Gentry III, that this Court’s decision in that ease can be considered only as one based on an insufficiency of the evidence. Therefore, principles of double jeopardy, under both the United States Constitution and the Alabama Constitution, would apply, and we conclude that the Court of Criminal Appeals properly interpreted Gentry III as a reversal based on an insufficiency of the evidence, and that court’s judgment is due to be affirmed.
Although the decision in Gentry III has been expressly overruled in Davis v. State, [Ms. 1961993, January 8, 1999] - So.2d - (Ala.1999), we are nonetheless compelled to point out that the State is barred from retrying Gentry on the capital-murder charge. This Court’s decision in Gentry III, in which this Court reversed the conviction because of insufficiency of the evidence, had the effect of an acquittal as to the burglary element of the offense. See Monge v. California, 524 U.S. 721, -, 118 S.Ct. 2246, 2251, 141 L.Ed.2d 615 (1998). The Double Jeopardy Clauses of the Federal and State constitutions, therefore, regardless of this Court’s decision in Davis, prohibit a retrial on the capital-murder charge. See Monge, supra, and Burks, supra.
We point out, however, that, as the Court of Criminal Appeals noted, holding that a retrial of Gentry on the capital-murder charge would violate the constitutional prohibition against double jeopardy in no way precludes the State from proceeding against Gentry on a charge of murder, under § 13A-6-2, Ala.Code 1975.
AFFIRMED.
HOOPER, C.J., and HOUSTON, SEE, and LYONS, JJ., concur.
ALMON, SHORES, KENNEDY, and COOK, JJ., concur in the result.